Submitted on July 24, petition for writ of
mandamus denied August 14, 1981

STATE ex rel ROBESON,
*Petitioner-Relator,*

*v.*

OREGON STATE BAR,
*Respondent.*

(SC 27989)

632 P2d 1255

Vincent G. Robeson, Lake Oswego, submitted a brief pro se.

George A. Riemer, General Counsel, Oregon State Bar, Portland, submitted a brief on behalf of respondent.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, Tanzer and Campbell, Justices.

PER CURIAM.

## PER CURIAM.

Petitioner was suspended from the practice of law pursuant to ORS 9.200 for failure to pay his assessed contributions to the professional liability fund established pursuant to ORS 9.080.[1] Under subsection (3) of ORS 9.200, a member suspended for this reason "shall be reinstated only upon compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions." Petitioner has filed an application for reinstatement with the Oregon State Bar. He also obtained from the United States District Court a preliminary injunction against the Board of Governors of the Oregon State Bar which also "ordered" him to petition this court and ordered the bar temporarily to reinstate petitioner pending this court's decision.[2] Thereafter petitioner filed the present petition for a writ of mandamus against the Oregon State Bar. For the reasons that follow, we conclude that petitioner is not entitled to such a writ.

### A. The Rules.

The relevant "rules of the Supreme Court and rules of procedure" referred to in ORS 9.200(3) are Sections 18-24 of the Rules of Procedure Relative to Admission, Discipline,

---

[1] ORS 9.080 provides:

". . .

"(2)(a) The board [of governors of the Oregon State Bar] shall have the authority. . . to establish a lawyer's [sic] professional liability fund. . . . The board shall have the authority to assess each member of the state bar in the private practice of law whose principal office is in Oregon for contributions to such fund. . . . "

ORS 9.200 provides:

"(1) Any member in default in payment. . . of assessed contributions to a professional liability fund under subsection (2) of ORS 9.080 for a period of 30 days, shall, after 60 days written notice of the delinquency, be suspended from membership in the bar. . . .

". . . "

[2] The literal terms of the preliminary injunction are:

"IT IS HEREBY ORDERED that the Board of Bar Governors temporarily reinstate plaintiff. Plaintiff is ordered to petition for permanent reinstatement in the Oregon Supreme Court as a condition precedent to his temporary reinstatement. All further matters in this court shall be stayed pending resolution of the plaintiff's petition in the Supreme Court."

Resignation and Reinstatement, promulgated by the bar's board of governors with the approval of this court. *See* Oregon State Bar, Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement § 2 (1978).[3] Section 18 contains provisions for reinstating members in active status that differentiate between two sets of circumstances. The first part of Section 18 governs reinstatement of persons who have resigned, been disbarred, suspended for professional misconduct for more than six months, become inactive members for more than six months, or been "suspended for any other reason." They must apply for reinstatement and show "the good moral character and general fitness required for admission to practice law in Oregon."[4] The second part of the rule

---

[3] Section 2 provides:

"These 'Rules of Procedure' are promulgated by the board pursuant to the authority vested in it by the rules of the court and the bar act. They may be amended or repealed, and new or additional rules of procedure may be promulgated and adopted, by the board at any regular meeting of the board or at any special meeting of the board called for that purpose; but no such amendment, repeal or new or additional rule shall become effective until it is approved by the court."

Tracing "the authority vested in [the board] by the rules of the court and the bar act" is a convoluted undertaking. The bar cites ORS 9.005(6), which defines the term "Rules of procedure," but the definition section of a statute normally does not serve as a grant of authority. ORS 9.200(3), *supra*, refers to the rules of procedure in terms that assume these have been authorized elsewhere. The bar also cites ORS 9.110, which authorizes the board "to formulate and declare rules and regulations necessary or expedient for carrying out the functions of the state bar," but as this section makes no reference to approval by the Court, it is not clear whether the "functions" referred to in that section were meant to include those performed by the bar in assisting functions of the Court such as suspension and reinstatement.

The bar cites no rule of this Court as the authority referred to in section 2.

[4] The relevant portions of Section 18 provide:

"Any person who has been an active member of the bar, but who has resigned . . . or been disbarred, suspended for professional misconduct for a period of more than six months, suspended for any other reason, enrolled voluntarily [or involuntarily] as an inactive member. . . may be reinstated. . . on application and compliance with the rules of the court and these rules of procedure and showing, to the satisfaction of the bar and the court, that he has the good moral character and general fitness required for admission to practice law in Oregon and that his resumption of the practice of law in this state will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest. No such person shall resume the practice of law in this state without the recommendation of the bar, unless otherwise ordered by the court on its review of the action and recommendation of the bar."

provides that members who have been suspended for professional misconduct or become inactive for six months or less and against whom no complaints or disciplinary charges are pending "shall be reinstated automatically, without application."[5]

When an application for reinstatement is required, section 20 provides that the board shall make an investigation and recommendation to this court. If the recommendation is favorable, the court may reinstate the applicant; if unfavorable, the applicant may petition the court to review the application.[6] Section 21. If necessary, the court may refer the application to a trial board for a hearing upon notice to the applicant of the bar's objections to his or her moral character or general fitness. Sections 23, 24. *Cf.* ORS 59.525. The trial record ultimately reaches this court for decision. Sections 46.1-48.

The bar has transmitted to the court copies of petitioner's application for reinstatement together with an explanatory letter by the bar's assistant general counsel. The letter states in part:

"At its meeting on July 10-11, 1981, the Oregon State Bar Board of Governors considered an application for reinstatement to active membership status filed by Vincent G. Robeson (Bar No. 64094). Mr. Robeson had been suspended from Bar membership on May 18, 1981 pursuant to ORS 9.200 for nonpayment of his 1981 Professional Liability Fund assessment. It was the decision of the Board of

---

[5] Section 18, *supra* n. 3, continues:

"A person who has resigned (under Appendix A to these rules) or been suspended for professional misconduct or enrolled voluntarily as an inactive member, for a period of six months or less, and against whom no complaints or charges of professional misconduct were pending and unresolved at the time of such resignation, suspension or voluntary enrollment, and against whom no complaints or charges of professional misconduct are pending and unresolved at the end of such six-month or lesser period, shall be reinstated automatically, without application, unless the court, in any suspension order, shall have directed otherwise. Any such reinstated member shall pay to the Oregon State Bar, prior to reinstatement, the active membership fee and client security fund assessment for the calendar year of reinstatement, less any active or inactive membership fee and client security fund assessment already paid to the Oregon State Bar for the calendar year of reinstatement."

[6] The rules do not provide for reinstatement by the bar without action by the Court; nor does the "automatic" reinstatement provision of section 18, *supra* n. 4, include a reference to persons suspended for nonpayment of assessed contributions under ORS 9.200(1), *supra* n. 1.

Governors to recommend to the Supreme Court that Mr. Robeson's application for reinstatement be denied. Enclosed you will find duplicate originals of the reinstatement application and attachments, along with the reinstatement case summary. In order to put this matter into perspective, I feel it would be instructive to briefly review the circumstances surrounding this matter which gave rise to the Board of Governors' recommendation.

"On June 19, 1981, Mr. Robeson submitted his reinstatement application to the Bar office. The Board of Governors, in an attempt to expedite consideration of applications filed by members suspended for nonpayment for the Professional Liability Fund assessment, held a conference call meeting on the very day Mr. Robeson's application was submitted, in order to determine whether those applicants who had thus far filed reinstatement applications ought to be temporarily reinstated pursuant to Section 20 of the Rules of Procedure Relative to Admission, Discipline, Resignation, and Reinstatement. Mr. Robeson's application was one of those given consideration during that meeting.

"During the course of the discussion over Mr. Robeson's application, it was brought to the attention of the Board of Governors that a formal disciplinary proceeding was then pending against Mr. Robeson (No. 79-22) and that the trial board appointed in that disciplinary matter had rendered its decision that very day. In light of the trial board findings that Mr. Robeson had violated a number of disciplinary rules, it was the decision of the Board of Governors to table consideration of Mr. Robeson's application until the regular Board meeting scheduled for July 10-11, 1981, in order to allow time for the General Counsel's office to review the facts giving rise to the charges against Mr. Robeson in the disciplinary proceeding and to analyze what effect, if any, the findings of the trial board ought to have on the Board of Governors' consideration of Mr. Robeson's reinstatement application."

The letter also states that petitioner has paid the delinquent 1981 assessment for the Professional Liability Fund but has not paid a reinstatement fee required by the rules.

## B. The petition for writ of mandamus.

In petitioning this court for a writ of mandamus, petitioner does not claim that respondent refuses to comply with its duties under the rules or request that this court

order it to do so.[7] Petitioner's attack rather is on the validity of the existing scheme of suspension and reinstatement. While the legal import of the allegations in the petition is not always clear, petitioner's criticism falls into three groups.

First, the petition attacks the statutory suspension for nonpayment of the assessment as a usurpation of this court's authority over the admission of attorneys. This argument in effect reaches beyond the specific provision for a professional liability fund and questions the validity of all admission and suspension provisions of the State Bar Act. We see nothing in the requirement to provide security for clients that would "unduly burden or substantially interfere with the judiciary," *Sadler v. Oregon State Bar,* 275 Or 279, 285, 550 P2d 1218 (1976), in performing its judicial functions under Oregon Constitution, Art VII.[8]

Second, the petition asserts that the rules of procedure unlawfully delegate power 'reserved' to the courts to the Oregon State Bar. One difficulty with petitioner's choice of a remedy is that if he is right and only this court rather than the bar has legal authority to process his suspension or reinstatement, a writ of mandamus from this court to respondent is unnecessary and inappropriate. In any event, however, the rules summarized above leave the final decision on reinstatement to the court and delegate only the administrative procedures to the bar.

---

[7] The petition alleges irregularities in the notice of suspension, as a predicate for a writ ordering the bar to show him as a member in good standing; it does not demand an amended notice or otherwise corrected procedure. We find that the notice was adequate to inform petitioner that failure to pay the overdue assessment would lead to suspension.

[8] It has been noted that "inherent" judicial power is the capacity to act in the absence of legislation; it does not forbid legislation on any subject on which a court can act in the absence of legislation. "The limits of legislative power will be reached when a legislative scheme denies the courts a competent ethical bar, not when it preempts the regulation of the bar." *Oregon Survey,* 56 Or L Rev 387, 391 (1977). If a case might arise when the effect of a statute denies a court the opportunity to hear an attorney whose participation the court deems necessary or desirable, the present broadside attack on the entire legislative power of regulating attorney-client relations does not pose that case.

■ The remaining criticisms may be grouped together as invoking the due process clause of the 14th amendment.[9] Some of these criticisms concern procedure, others attack the substance of the suspension provisions. It is difficult to characterize nine separately numbered allegations each of which begins with the assertion that "It is unreasonable for the Oregon State Bar" to do various things in the reinstatement process. They do not allege that the bar in fact has done these things, though this may be implied. Nor does an allegation that official action is "unreasonable" state a self-explanatory reason why the action is legally invalid.

■ Petitioner's supporting memorandum makes the following points. (1) Suspension from the practice of law is a deprivation of liberty or property within the meaning of the due process clause. We agree. (2) Due process requires notice. Petitioner claims that the notice he received of his impending suspension was inadequate because it was sent on stationery of the Professional Liability Fund and did not indicate the correct deadline for payment. The letter, dated March 17, 1981, stated that petitioner's 1981 assessment "remains unpaid as of March 12, 1981," and that suspension proceedings would be initiated if payment was not received by May 18, 1981. This was adequate notice both that the assessment was overdue and that the fund would report the delinquency to the bar for suspension proceedings.[10] (3) Automatic suspension for nonpayment of the assessment denies "substantive due process," at least if it does not provide automatic reinstatement upon payment. For a premise for this assertion, petitioner relies on two decisions from the early years of "substantive due process," *Dent v. West Virginia,* 129 US 114, 9 S Ct 231, 32 L Ed 623 (1889) and *Douglas v. Noble,* 261 US 165, 43 S Ct 303, 67 L Ed 590 (1923). Without stopping to discuss the later fate or

---

[9] "No state shall... deprive any person of life, liberty, or property, without due process of law.... "

US Const amend XIV. Petitioner cites no other clause of the state or federal constitutions.

[10] Petitioner later received a "final notice" indicating that petitioner owed a "late payment penalty" of $20.00 and that he could request to pay one half on April 12 and one half on July 1. He proposes to count the 60-day presuspension notice period from April 12, but the letter of March 17 already was the "written notice of delinquency" required by ORS 9.200.

the current status of the doctrines of that era, we note that these decisions sustained state laws licensing the practice of medicine and dentistry respectively. We have no doubt that the due process clause does not foreclose making the practice of a profession contingent on maintaining adequate arrangements for making good financial losses caused to clients, patients or others. (4) Petitioner cites cases from other jurisdictions for the proposition that a suspension for nonpayment of dues terminates upon payment and is not an occasion for examining an attorney's character or other qualifications. These sources may accurately state the law of their respective states. They are not authority for concluding that the federal constitution requires automatic reinstatement upon late payment.[11]

The reinstatement procedure under the rules provides due process if an inquiry into the suspended attorney's fitness to resume practice may be made at all. In essence, petitioner's attack on the rules contends that when the suspension results from failure to pay an assessment required in order to practice law, the state is constitutionally obliged to let him resume practice upon payment even if there is doubt about his fitness. We perceive no basis in constitutional law for this contention. There may be shortcomings in the statutes and the rules that deserve correction, *see supra,* notes 3, 6, but that is a matter for different proceedings. As for the present petition, we find no allegations entitling petitioner to a writ of mandamus against the Oregon State Bar.

Petition denied.

---

[11] The petition also claims that suspension interferes with an alleged but unexplained constitutional right of clients to choose their own counsel. The petition does not allege, however, that any client asserts such a right or that petitioner is authorized to assert it on their behalf.