On petition filed April 11, 1986, by an attorney for avoidance of suspension, petition allowed subject to conditions May 28, 1986

# BALDERREE,
## *Petitioner,*
*v.*

# OREGON STATE BAR et al,
## *Respondents.*
## (SC S32773)
719 P2d 1300

Respondents appeared by William G. Earle, Portland. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland.

PER CURIAM

## PER CURIAM

This matter is before the court on a petition that seeks to avoid suspension under ORS 9.200 of petitioner's membership in the Oregon State Bar (Bar) for failure to pay the 1986 Professional Liability Fund (PLF) assessment authorized by ORS 9.080(2).

ORS 9.200 provides:

"(1)  Any member in default in payment of membership fees established under ORS 9.191(1) for a period of 90 days, or any person in default in payment of membership fees established under ORS 9.191(2) for a period of 30 days after admission or as otherwise provided by the board, *or any member in default in payment of assessed contributions to a professional liability fund under ORS 9.080(2)* for a period of 30 days, shall, after 60 days' written notice of the delinquency, be suspended from membership in the bar. The notice of delinquency shall be sent by the executive director, by registered or certified mail, to the member in default at the last-known post-office address of the member. *Failure to pay* the fees or contributions within 60 days after the date of the deposit of the notice in the post office *shall automatically suspend the delinquent member.* The names of all members suspended from membership for nonpayment of fees or contributions shall be certified by the executive director to the State Court Administrator and to each of the judges of the Court of Appeals, circuit, tax and district courts of the state.

"* * * * *

"(3)  A member suspended for delinquency in payment of such fees or contributions shall be reinstated only on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions." (Emphasis added.)

ORS 9.080(2) provides:

"(2)(a)  The board shall have the authority to require all active members of the state bar engaged in the private practice of law whose principal offices are in Oregon to carry professional liability insurance and shall be empowered, either by itself or in conjunction with other bar organizations, to do whatever is necessary and convenient to implement this provision, including the authority to own, organize and sponsor any insurance organization authorized under the laws of the State of Oregon and to establish a lawyer's professional

liability fund. This fund shall pay, on behalf of active members of the state bar engaged in the private practice of law whose principal offices are in Oregon, all sums as may be provided under such plan which any such member shall become legally obligated to pay as money damages because of any claim made against such member as a result of any act or omission of such member in rendering or failing to render professional services for others in the member's capacity as an attorney or caused by any other person for whose acts or omissions the member is legally responsible. The board shall have the authority to assess each active member of the state bar engaged in the private practice of law whose principal office is in Oregon for contributions to such fund, to establish definitions of coverage to be provided by such fund and to retain or employ legal counsel to represent such fund and defend and control the defense against any covered claim made against such member. Any fund so established shall not be subject to the Insurance Code of the State of Oregon. Records of a claim against the fund are exempt from disclosure under ORS 192.410 to 192.500.

"(b)   For purposes of paragraph (a) of this subsection, an attorney is not engaged in the private practice of law if the attorney is a full-time employe of a corporation other than a corporation incorporated under ORS chapter 58, the state, an agency or department thereof, a county, city, special district or any other public or municipal corporation or any instrumentality thereof. However, an attorney who practices law outside of the attorney's full-time employment is engaged in the private practice of law.

"* * * * *"

The first issue is whether we have jurisdiction to decide the merits of the controversy between petitioner and respondents. Petitioner contends our jurisdiction arises under ORS 9.529, which provides:

"Bar proceedings relating to discipline, admission and reinstatement are neither civil nor criminal in nature. They are sui generis and within the inherent power of the Supreme Court to control. The grounds for denying any applicant admission or reinstatement or for the discipline of attorneys set forth in this chapter are not intended to limit or alter the inherent power of the Supreme Court to deny any applicant admission or reinstatement to the bar or to discipline a member of the bar."

Respondents answer that

"[I]t would appear that this Court does have original jurisdiction to decide this case and, on that basis, respondents have no objection to the Court doing so."

That both petitioner and respondents assert our jurisdiction is not controlling.

■     We have suggested that the matter is within the jurisdiction of the circuit court under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160. Respondents acknowledge that is so but that the jurisdiction of the circuit court is not exclusive of our jurisdiction. Respondents rely on ORS 9.529 and the implications of our decision in *State ex rel Robeson v. Oregon State Bar,* 291 Or 505, 632 P2d 1255 (1981).

In that case the plaintiff had been suspended for failure to pay the PLF assessment. He applied for reinstatement and also obtained an injunction from the United States District Court for the District of Oregon ordering the Bar temporarily to reinstate him and ordering him to petition this court for resolution of the matter. He petitioned this court for a writ of mandamus to compel the Bar to reinstate him, asserting that his suspension usurped this court's authority over admission, suspension and reinstatement of attorneys, that the legislative delegation of power to the Bar to suspend was unlawful and that the procedure followed by the Bar had deprived him of property without due process of law under the Fourteenth Amendment to the Constitution of the United States. We rejected all three contentions and denied issuance of a writ of mandamus.

■     That case did involve reinstatement, a matter to which ORS 9.529 is directed. This case does not involve reinstatement because we have stayed petitioner's suspension pending resolution of the matter at bar. Neither does this case involve discipline or admission. It would appear, therefore, that this is not a matter within ORS 9.529.

■     As a practical matter, however, whether an attorney's suspension has been temporarily stayed, as in this case, or he has been temporarily reinstated, as in *Robeson,* the decision in either case involves suspension of an attorney, and that is a matter for final decision of this court. *State ex rel Robeson v. Oregon State Bar,* 291 Or at 511. To hold, therefore, that we have no jurisdiction in this case although we passed on the

merits of the claim in *Robeson* would exalt form over substance.

We conclude that although the circuit court would have jurisdiction under the Uniform Declaratory Judgments Act, that does not deprive this court of jurisdiction to address the claim here presented.

The following are agreed by the parties to be true. Petitioner, since July 1978, has been an attorney employed full time by a corporate title company that is not incorporated under ORS chapter 58. As such, he is not engaged in the private practice of law. ORS 9.080(2)(b). In the years 1978 through 1982, petitioner signed a form furnished by the PLF claiming exemption from the PLF assessment by reason of the fact that he is not engaged in the private practice of law. Each of those years, exemption was granted.

In December 1982, the Board of Directors of the PLF sent a letter signed by the administrator (now chief executive officer) advising that in future years attorneys requesting exemption would be required to sign an agreement to indemnify the PLF for any amounts the PLF might be required to pay resulting from a claim against the attorney for legal malpractice. The form for requesting exemption thereafter contained such an indemnity agreement.[1]

In 1983, 1984 and 1985, petitioner signed the request but crossed out the text referring to indemnity. In each year petitioner's request for exemption was allowed.

In December 1985, however, the chief executive officer (formerly the administrator) informed petitioner that the PLF would not accept his request for exemption for the year 1986 because he refused to sign the indemnity agreement. The PLF also advised petitioner that if he would sign "the request for exemption as printed, we will grant your request." Since that time petitioner has refused to sign the indemnity agreement, and he has not paid the PLF assessment.

---

[1] The indemnity agreement provided:

"I certify that I will indemnify and hold the Professional Liability fund harmless from any judgment, settlement, cost, expense or attorneys fees it may incur as a result of any claim based upon allegations that I was engaged in the private practice of law. I agree that the PLF may at its sole option and discretion defend or participate in the defense of any such claim."

In February 1986, petitioner received a "final notice" advising him that failure to pay the assessment would result in automatic suspension, quoting in full ORS 9.200. Subsequently, the PLF set a deadline for payment by April 16, 1986.

Petitioner then commenced this proceeding in this court, and we allowed his motion for a stay of suspension pending our disposition of this matter.

Petitioner contends that ORS 9.080(2)(a) only allows the Board of Governors of the Bar to require assessments to the PLF from those attorneys engaged in the private practice of law. The statute is not so narrow. It also provides that the Board

"shall be empowered, either by itself or in conjunction with other bar organizations, to do whatever is *necessary and convenient* to implement this provision * * *." (Emphasis added.)

The question for decision, therefore, is whether the requirement of the indemnity agreement as a condition of exemption from assessment is necessary and convenient.

Petitioner believes that because he does not engage in private practice of law, no one could make a claim against him for legal malpractice. That is not necessarily so. It does not strain the imagination to envision that some individual with whom petitioner had dealings would claim that petitioner was guilty of professional negligence with regard to those dealings. If the claim were asserted by civil action and it were eventually determined that petitioner had been engaged in private practice of law and was liable to claimant, the text of ORS 9.080(2) could be read to require the PLF to pay the claim, even though petitioner in good faith believed that he was not engaged in private practice of law with respect to those dealings.

This potential for liability of the PLF and its need to control and manage the defense of such a claim is the reason for requiring the indemnity agreement of those some 2,000 attorneys that request exemption because they are not engaged in the private practice of law. The PLF takes those attorneys at their word that they are not engaged in private practice.

We conclude that the term "necessary and convenient" in ORS 9.080(2)(a) means that which is reasonably

necessary and useful in implementing the Board's authority. Requiring the indemnity agreement as a condition for grant of exemption for assessment is both.

It is ordered that the stay of suspension heretofore granted is continued until 5 p.m. on June 20, 1986. If petitioner has not either signed and delivered the request for exemption as printed by that time or paid the assessment and any lawful charges for late payment by that time, he shall be, as of 5:01 p.m. on June 20, 1986, automatically suspended until further order of this court.