Submitted on the record August 6, remanded November 14, 1975

I_N THE MATTER OF THE APPLICATION OF
## DOUGLAS LEE SCHAEFFER,
F_OR ADMISSION TO PRACTICE LAW IN THE STATE OF OREGON
541 P2d 1400

Norman L. Lindstedt, Portland, for applicant-petitioner.

Hugh K. Cole, Jr., and Donald R. Husband, Eugene, for the Oregon State Bar.

PER CURIAM.

Applicant passed the Oregon bar examination in 1973. However, the Board of Bar Examiners was unable to recommend his admission to practice because it failed to find that he possessed the "good moral character" required by ORS 9.220(2)[1] and by Rule 4.05(3) of the Rules for Admission of Attorneys.[2] Thereafter, the Oregon State Bar filed with this court its Statement of Objections to the Admission of the Applicant to which applicant filed an answer. A hearing on the objections was held before a three-person trial committee which filed its findings, conclusions and recommendations with this court. Its members unanimously recommended that applicant be admitted. Applicant then filed a petition requesting a favorable review by this court of the trial committee's decision and recommendation. Neither applicant nor the Oregon State Bar argued or submitted briefs on the matter.

The first two objections to applicant's admission were his "[failure] to disclose on his Application for Admission under subparagraphs 16(b) and (k) the

---

[1] ORS 9.220(2): "An applicant for admission as attorney must apply to the Supreme Court and show that he or she:
"* * * * *.

"(2) Is a person of good moral character, which may be proved by any evidence satisfactory to the court.
"* * * * *."

[2] Rule 4.05(3), Supreme Court of the State of Oregon Rules for Admission of Attorneys (January 3, 1972 ed): "An application for admission on the student examination may be filed by an individual who:
"* * * * *.

"(3) Is of good moral character;
"* * * * *."

issuance of three (3) citations for driving while suspended, together with the subsequent issuance of bench warrants for Applicant-Petitioner's Arrest on account thereof:" and "[f]ailure of Applicant-Petitioner to act responsibly with regard to the above matter by ignoring the aforementioned citations until forced to do otherwise some eight (8) months later upon issuance of bench warrants for Applicant-Petitioner's arrest." In answer thereto applicant "[admitted] that he failed to disclose on his application for admission under subparagraph (k) the issuance of three citations for driving while suspended," and "[admitted] that he did not promptly appear to answer to the aforementioned citations." It is apparent from the application form, however, that only the answer to the question in subparagraph 16(b) is relevant to this review. In his answer to the question, "Have you ever been accused of, charged with, or arrested or detained for, the violation of any state, federal, municipal or other law, statute or ordinance, including juvenile or expunged offenses?", applicant failed to list the three citations issued for driving while suspended.

The evidence discloses that while applicant was a law student, he was cited for failure to stop at a stop sign. His driver's license was then revoked for his failure to make any appearance in response to the citation. Thereafter, in the course of his being stopped for matters such as out-of-date vehicle license and defective equipment, applicant was cited three times for driving while suspended. He made no appearance in response to these citations as well. These incidents took place between November 1972 and January 1973. Applicant's application for admission to the bar, which failed to disclose these incidents, was dated April 24, 1973.

In August 1973 applicant was called by his mother

from her home in Springfield and was told by her that a police officer had called at her home attempting to locate applicant and that the officer had warrants for applicant's arrest. Applicant then made a voluntary appearance in the courts where the driving-while-suspended charges were pending.

Thereafter applicant was summoned by letter for an interview with a member of the Board of Bar Examiners, which had received letters from two sources suggesting a check of applicant's moral qualifications. During a telephone call which applicant made to arrange the exact date of interview with a member of the Board, applicant indicated there was an omission from his application which he wished to disclose. During the interview on August 31, 1973, he voluntarily disclosed that on his application he omitted the circumstances relating to the citations. He subsequently satisfied the charges which were the basis for the citations.

Applicant's explanation of his failure to disclose these matters on his application was that he did not realize the question on the application solicited this kind of information. He said he assumed disclosure on his part was unnecessary since he had given a release to the Bar for all driver's license information and that it would therefore be informed of these matters upon its check of applicant's motor vehicle record. He did not explain what suddenly prompted him, upon being summoned to an interview by a member of the Board of Bar Examiners, to decide that perhaps he should have disclosed the information upon his application. The check by the Bar with the Motor Vehicles Division did not disclose the occurrences since there had been no final disposition at that time and the courts had not transmitted the information to the Division.

Applicant explained that he did not make an initial

appearance on the traffic matters because, lacking sufficient funds at the time with which to take care of the citations and fearing he would be sent to jail and be forced to drop out of law school if he appeared and could not pay, he was attempting to delay an appearance until he was able to pay a fine. He admitted the original charge of failure to stop could have been taken care of by posting bail of approximately $15. His testimony revealed he was divorced from his then wife in November 1972, which divorce resulted from his misconduct with a third person, and that he had the attendant costs and expenses to pay together with $75 child support and family bills. His income had been approximately $230 a month under the "GI" bill during attendance at law school, $1,500 per year borrowed from the state scholarship fund, and whatever money he could earn during the summers. Prior to the family disruption his wife had been employed as a Salem school teacher.

Applicant was prone to financial difficulties. Before starting law school he attended Naval Officers' Candidate School in Pensacola, Florida, and borrowed funds available there which he had not fully repaid. Subsequent to his divorce he married the woman who was the cause of his defection from his first marriage and, at the time of the hearing before the trial committee, he was in the throes of a divorce from her by virtue of which he was accumulating another swatch of bills.

The trial committee was of the opinion that the omission to disclose the three charges of driving while suspended "is not of sufficient magnitude as to represent lack of good moral character or general fitness" and that "[t]he Applicant's failure to respond promptly to the traffic citations is considered by the trial committee to be an error in judgment on behalf of Applicant, but does not evidence lack of good

moral character or general fitness to be admitted as a member of the Oregon State Bar." With these conclusions this court does not fully agree for the reasons hereinafter set forth.

The next charge against applicant was a "[m]isrepresentation * * * on his Application for Admission and upon personal interview by an Oregon State Bar representative of the circumstances and manner of resolution of a credit action brought against Applicant-Petitioner deriving from and subsequent to the dissolution of his marriage in 1972;". The testimony indicates that applicant told the representative of the Bar that he and his first wife had obligations which had been placed in the hands of a collection agency and an action had been filed against them by the agency; that he had contacted the collection agency and had made arrangements to take care of the obligations at the rate of $50 per month. The representative of the Bar testified he had contacted the collection agency, whose representative told him that the agency had been in contact with applicant and that no arrangements had been made by him for payment. However, payments were being made by applicant's former wife. The representative of the collection agency also stated it was difficult to contact applicant. The Bar brought in no one from the collection agency to testify concerning the facts. Applicant had never been served with summons, but he had made an appearance by requesting an itemized statement of the accounts upon which the action was brought.

Applicant testified that when he made arrangements for payment he had no checking account; therefore, his wife made the payments and he reimbursed her. No one called the wife to testify if this was so. The application for admission listed the action and indicated there was an unpaid balance. The trial com-

mittee found that "the Oregon State Bar has failed to prove misrepresentations regarding the proceedings of a civil action regarding a collection agency." We feel uneasy about applicant's financial disclosures since he seems to have made general statements to the Bar representative instead of exact ones, but in the absence of testimony clearly evidencing intentional misrepresentation, we are inclined to agree with the trial committee.

The Bar objected to applicant's "* * * lack of candor during interview by an Oregon State Bar representative and [applicant's] ongoing reluctance to disclose his whereabouts or otherwise provide information as to where he resides and may be contacted." The Bar representative testified that applicant seemed reluctant to give any firm address concerning where he was then living; that it took considerable effort to secure this information from him; that he appeared to want to be contacted through his mother, even though he might not be living at her address, all of which gave the appearance of his wanting to control those who could contact him. The trial committee made no finding on this objection. We agree that petitioner exhibited "ongoing reluctance to disclose his whereabouts."

■ The statement of objections also included "Arrest or citation of Applicant-Petitioner on a charge of being a minor in possession of beer * * *." When he was 19 years of age and a sophomore in college, applicant and several other students were found to be in possession of beer. Applicant made a full disclosure of this on his application, and both the trial committee and this court are of the opinion that the matter is not significant.

An additional objection was applicant's failure to make his child support payments through the Clerk

of the Court as required by the divorce decree. Upon hearing it was found that the payments, though current, had been made by applicant directly to his wife rather than through the Clerk of the Court. Neither the trial committee nor this court considers this a matter of significance.

The last objection was applicant's excessive use of intoxicants in public. In one instance there was proof that applicant had been drinking and creating a disturbance. This took place at the home of his second wife during the pendency of their divorce proceeding, and it resulted in his plea of guilty to the charge of disorderly conduct and criminal trespass. This occurred a year after he took the bar examination but prior to the hearing before the trial committee. The evidence indicates that petitioner drinks upon occasion; it does not indicate he has a drinking problem. The trial committee found this final objection was not proved, and this court agrees with its finding.

We receive from the evidence an impression that the applicant is an emotionally immature individual and that he has developed a pattern of avoiding as long as possible any problem or stressful situation rather than trying to cope with or solve it. He does not outright lie about such matters when questioned, but he is inclined to attempt to pass them off with glib, equivocal answers which put him in the best possible light. We cannot accept his explanation for failing to disclose to the Bar upon his application the charges of driving while suspended. We would normally put the applicant upon probation or require him to reapply after a waiting period and reinvestigation. As it is, applicant has already lost two years of practice. We direct the Board of Bar Examiners to investigate applicant's conduct during the period following the bar examination, with special

emphasis upon his financial condition as well as upon the morality of his conduct, and to file with the court a report, a copy of which shall be sent to applicant. If the report shows no misconduct during the indicated period, other than that which is already known to this court, and if it appears that applicant's financial condition has not further deteriorated as a result of his own voluntary conduct, applicant will be admitted.