Argued and submitted December 2, 1987, application for admission to Oregon State
Bar allowed May 3, 1988

In the Matter of the Application of
DARRIS K. ROWELL
For Admission to the Oregon State Bar.
(SC S34148)
754 P2d 905

Richard M. Walsh, Portland, argued the cause and filed the briefs on behalf of Darris K. Rowell. With him on the briefs was Schouboe, Marvin & Furniss, Portland.

Teresa J. Schmid, Assistant General Counsel, Lake Oswego, argued the cause and filed the brief on behalf of the Oregon State Bar.

Before Peterson, Chief Justice, and Lent, Campbell, Carson, Jones and Gillette, Justices.

PER CURIAM

## PER CURIAM

The issue in this case is whether Darris Rowell (applicant), a 1986 graduate of the University of Oregon School of Law who has applied for admission to the Oregon State Bar, has the requisite good moral character for admission to the Bar. The issue turns on the present significance of applicant's criminal history. We admit the applicant.

Applicant passed the Oregon Bar Examination in July 1986, and the Multistate Professional Responsibility Examination in August 1986. On his application for Bar membership, applicant stated that he had been convicted of crimes. As a result, applicant appeared at a hearing before the Board of Bar Examiners (the Board) on January 2, 1987. On January 30, 1987, a majority of the Board concluded that it could not recommend that applicant be admitted to the Oregon State Bar. On May 8, 1987, the Board agreed to review its decision. The Board, on reconsideration, split 7-7 as to whether to recommend applicant's admission. Because a majority of the Board is needed to recommend admission,[1] the Board, in a written opinion, recommended against applicant's admission. The seven members favoring applicant's admission issued a separate minority opinion.

The Board recommended against applicant's admission because seven of its members felt that applicant had not satisfactorily shown that he is of good moral character as required by ORS 9.220(2)(a). The seven found that the number of applicant's criminal offenses, including activities which applicant admitted but for which he was not charged, the seriousness of those offenses, applicant's repeated violations of probation, the fact that the offenses were relatively recent, applicant's history of substance abuse and what the seven viewed as his lack of candor with his present employer compelled the conclusion that applicant had not proven that he is presently of good moral character.

### FACTS

There is but one version of facts in this case — the only evidence of what applicant's conduct has been is that

---

[1] Rules for Admission of Attorneys 1.55.

offered by applicant. The Board has produced no other evidence of applicant's conduct and has based its case on an interpretation of the facts admitted by applicant that differs from the interpretation offered by applicant.

At some time in the mid-1970s, applicant, then a teenager, started to smoke marijuana. By January 1976, while he was a college student in North Carolina, applicant was selling marijuana as well as using it. He was arrested and charged with possession of marijuana with intent to sell. He pleaded guilty and was sentenced to six months in jail and three and a half years on probation. He was released after serving about five months. In early 1977, applicant was arrested after he broke a glass door in the Student Union at his college. He was under the influence of alcohol at the time. He pleaded no contest to a charge of injury to real property and was discharged in return for paying restitution and performing community service.

Applicant sold marijuana and amphetamines on a regular basis from July 1977, to September 1977. In September, while intoxicated, he entered an unlocked car and went to sleep on the seat. The owner of the car called the police who arrested and searched applicant. Hashish and a white powder were found. Applicant was charged with possession of hashish, possession of cocaine (the powder was apparently not cocaine but amphetamine) and breaking and entering a vehicle. Possession of a controlled substance was a violation of the conditions of his probation.

Applicant posted bail on the new charges and then left North Carolina for Oregon, in violation of the conditions of his probation and the conditions of his bond. After he had been in Oregon for six months, he was stopped by the police and his identification was checked. The circumstances of the stop and arrest are irrelevant to applicant's moral character either at the time of the arrest or at the present. The check revealed applicant's fugitive status and he was arrested. He posted bond and returned to North Carolina without any escort. He voluntarily surrendered to the North Carolina authorities and pleaded no contest to the 1977 charges. One charge was reduced from a felony to a misdemeanor and charges for violation of the conditions of his probation and

bond were dropped. Applicant was sentenced to two years probation and was permitted to serve the probation in Oregon.

Applicant returned to Oregon in July 1978. He states that he has not sold drugs since that time. He continued to smoke marijuana and occasionally use other drugs. Applicant attended the University of Oregon and was graduated in 1981. Shortly before graduation his wife left him, and he began drinking heavily. On a day in September 1981, while still under the influence of alcohol and cocaine that he had consumed the previous night, applicant drove his car off the road. The police arrived and discovered that applicant was in possession of some cocaine. Applicant was charged with and pleaded guilty to possession of the cocaine. He was placed on thirty months probation and participated in an alcohol rehabilitation program. Applicant states that he has not used cocaine since that time and has apparently been in control of his drinking problem. He did continue to smoke marijuana.

Applicant entered law school in 1983. He continued to smoke marijuana until February 1984, when he states that he finally quit. The use of marijuana was in violation of his probation and applicant had violated the conditions of every probation by his continued marijuana use.

While in law school, applicant was married. He was active in academic, official and student activities. He received a passing score on the Bar exam and has since obtained employment with the Nevada Public Service Commission.

## EVIDENCE OF CURRENT GOOD CHARACTER

■ Applicant concedes that his past conduct, especially his conduct from 1976 to 1978, shows that he did not at that time possess the good moral character necessary to his admission as a lawyer. The question is therefore whether applicant's moral character has changed sufficiently that he should be admitted to the practice of law. *See In re Fine,* 303 Or 314, 736 P2d 183 (1987). Applicant must prove by clear and convincing evidence that he is of good moral character.[2]

■ Applicant claims that the decrease in drug and alcohol use, the letters of recommendation sent to the Bar on his

---

[2] BR 7.5.

behalf, his admission of and regret for his past mistakes and his participation in activities for the public good are evidence that he is presently of good moral character.

### 1. Decreasing Drug Use

Applicant states, and we find, that he has not used any illegal substance for the last four years. Applicant has not used any illegal substance other than marijuana for the last six years. He has not sold an illegal substance for the last 10 years. In sum, applicant showed a decreasing participation in activities involving illegal substances over a six-year period, followed by four years of abstaining from any such activity at all. As to this issue, applicant's history establishes that he has now reached a level of maturity such that his moral character is presently satisfactory for admission.

### 2. Decreasing Alcohol Use

Many of the events that demonstrate applicant's former bad character involved alcohol abuse. Applicant appears to be currently in control of his drinking problem and has been in control for seven years. Without further evidence, we do not accept — as the Board accepted and argued to this court — that occasional social drinking establishes that applicant is not currently in control of his problems in this area.

### 3. Candor

Applicant has been candid with the Bar in admitting his past convictions and past behavior and activities. Most of the evidence of applicant's prior bad character was supplied by applicant's own statements and probably would not have been discovered if it were not for applicant's candor. The Board nonetheless questions applicant's candor for two reasons.

First, the Board claims that applicant is not being candid about his drinking problem because the Board does not accept the proposition that a person who has had a drinking problem can thereafter successfully reduce his alcohol use and become a social drinker. Without taking a position on the theoretical medical debate on this issue — partly because the precise nature of applicant's "problem," which could be psychological addiction, physiological addiction, or something else, is not shown on this record — we find that applicant's seven years of social drinking without apparent loss of control

is sufficient evidence that applicant is being candid (and accurate) when he states that drinking is not currently a problem in his life.

The Board also noted that applicant did not advise his present employer about his prior convictions. The evidence is that applicant has admitted the convictions in an employment interview situation when the subject was raised. The present employer did not ask any question that would elicit a statement about prior convictions or drug use. There is no suggestion that applicant would not have been forthcoming, had the matter appeared to be pertinent. We do not find that applicant's failure to mention past convictions in that employment interview is evidence of bad moral character when the subject was neither directly nor indirectly raised at the interview.

## 4. Letters of Reference

Applicant offered several letters of reference to the Bar from people who have known him in various capacities. Two of the letters state matters of significance. One was written by Robert J. Huckleberry, who is currently a district court judge and who represented applicant in his 1981 criminal case. Judge Huckleberry states that applicant has done "a complete 180." This statement from someone who knew applicant when he was still getting in trouble is important. Unlike most persons who provide references based solely on present knowledge,[3] this judge is able to compare the applicant's previous and present character and note whether there indeed has been a change. He is convinced that a positive change has taken place.

Another letter was written by a law professor, who is applicant's father-in-law. This writer noted an improvement in applicant's attitude even since the beginning of law school. This is further evidence that there has been a change in applicant's character and that the change is continuing. This professor also mentions that applicant has gone through extremely stressful situations in law school and after graduation without resort to drugs or alcohol.

---

[3] *See In re Fine,* 303 Or 314, 319, 736 P2d 183 (1987); *In re Bernard Jolles,* 235 Or 262, 275, 383 P2d 388 (1963).

### 5.  Regret for Past Actions

Applicant states that he considers that his past drug related activities, especially the sale of drugs, were wrong and that he regrets such activity. Although it is impossible to test absolutely the sincerity of such statements, the fact that the statements were made is of some importance. *Cf. In re Easton,* 289 Or 99, 103, 610 P2d 270 (1980) (applicant's failure to appreciate the moral and legal consequences of his actions was the most persuasive evidence of lack of reformation). The continuous lowering of the level of applicant's involvement with illegal drugs from 1978 through complete abandonment after 1984 is evidence that applicant's attitude toward drugs has changed.

### 6.  Participation in Activities for the Public Good

In law school, applicant was active in both academic and non-academic activities. Most notably, he volunteered his time to act as an advocate in two cases before the Associated Students of the University of Oregon Constitutional Court. His participation in each case appeared to be motivated by a desire to protect and further important legal principles.

### PASSAGE OF TIME

Each of these facts provides some evidence that applicant is presently of good moral character. The difficult question is whether sufficient time has passed since applicant's most recent unacceptable conduct for this court to be convinced that applicant has in fact changed and is currently of good moral character.[4] Our chief concern is with applicant's most recent marijuana use. When marijuana use is in violation of a condition of probation, it may be evidence of disrespect for law sufficient to prove bad moral character. On the other hand, when that probation violation is the result of some form of dependency and that dependency is later overcome, as appears to have occurred in this case, that violation loses most of its relevance. Assuming that the marijuana use in violation of probation is evidence of applicant's unsatisfactory moral

---

[4] *See In re Chase,* 299 Or 391, 702 P2d 1082 (1985) (possession of a controlled substance does not involve moral turpitude).

character at that time, applicant's use of marijuana terminated in February, 1984. That is now more than four years ago.

The length of time without evidence of unsatisfactory character needed to permit the conclusion that the actor is now of good moral character varies with, among other things, the person's age, the length of time that the unsatisfactory characteristics were evident and the nature of the unacceptable behavior. In applicant's case, we find that four years without engaging in the activities that evidenced his former unsatisfactory character are sufficient to indicate that he has changed. His personal, academic, professional and other achievements in the last four years all support the conclusion that applicant now is of good moral character.

Perhaps most convincing is the fact that there has been a slow, steady change in applicant's activities. The pattern of behavior exhibited by applicant shows a maturation process that started in 1978 or 1979 and has steadily continued. There was no sudden change when applicant decided to become a lawyer and that therefore might be treated with skepticism. Rather, there has been a change that predated the decision to attend law school and continued while in law school.

## CONCLUSION

A possibility has been raised that applicant should be admitted conditionally or on probation. *See In re Schaeffer,* 273 Or 490, 497, 541 P2d 1400 (1975). We think, however, that if this court is convinced that applicant is presently of good moral character, he should be admitted. If the court is not convinced, his application for admission should be denied. If a lawyer is of good moral character, the lawyer should be able to start a legal career on the same basis as other lawyers.

We judge only applicant's present moral character. His fitness to practice law is not otherwise at issue. *See In re Fine, supra.* While this court is mindful of the protection that must be accorded the lawyer's future clients,[5] we can judge only whether the lawyer's present character presents a risk. If

---

[5] BR 7.5 requires that the applicant show that the applicant's admission to the Bar will not be detrimental to the administration of justice or the public interest.

applicant's character becomes an issue at some time in the future, action can be taken at that time.

Applicant did not previously have the requisite moral character to be a lawyer in this state. His evidence that he has changed and is presently of good moral character is clear and convincing. We are satisfied that he has met his burden of proof. Applicant's application for admission to the Oregon State Bar is allowed.