Argued and submitted December 5, 1990, applicant's reapplication for admission to the Oregon State Bar denied February 26, with leave to reapply after July 23, 1991

In the Matter of the Application of

# KENNETH MILES JAFFEE,
*Petitioner,*

For Admission to the Oregon State Bar.

(SC S35948)

806 P2d 685

Arno H. Denecke, Salem, argued the cause for petitioner. Thad M. Guyer, Medford, filed the petition for reconsideration.

Jeffrey D. Sapiro, Oregon State Bar, Lake Oswego, argued the cause for the Oregon State Bar.

PER CURIAM

## PER CURIAM

The issue in this case is whether to admit Kenneth Miles Jaffee (applicant) to the Oregon State Bar. Applicant is a graduate of the McGeorge School of Law and an attorney admitted to practice in California since 1975. We do not admit applicant.

### PROCEDURAL HISTORY

Applicant passed the Oregon State Bar examination in July 1988 and had earlier passed the Multistate Professional Responsibility Examination. After a hearing in November 1988, the Oregon Board of Bar Examiners, by a split vote, did not recommend his admission. Applicant did not seek review of that decision in this court.

He reapplied in 1990. On August 28, 1990, after another hearing, the Board recommended his admission by a vote of ten to two.[1] We initially denied his admission by an order dated September 18, 1990, without receiving written or oral arguments. Thereafter, applicant petitioned for reconsideration before this court. Although neither the Rules for Admission of Attorneys in Oregon (Rules for Admission) nor the Oregon State Bar Rules of Procedure (BRs) contemplate an applicant's appeal from a positive recommendation by the Board, applicant argued that fundamental fairness requires such a procedure in the event that this court is considering denying admission despite the recommendation. He pointed out that, unless such an appeal were allowed, a person receiving the Board's favorable recommendation would be in a less protected position than one who receives an adverse recommendation, which permits an appeal. BR 1.1(i); Rules for Admission 5.05 to 5.15. We agree with those arguments and have provided the same review as we would have if applicant had appealed an adverse recommendation by the Board. We have considered both written and oral arguments and have reviewed the record *de novo*. BR 10.6.

### FACTS

From 1975 to late 1982, applicant practiced law in Sacramento, California, in the field of criminal defense. In

---

[1] Two of the ten favorable votes were to admit applicant conditionally during the completion of the California State Bar probation, which will be described in the text below.

July 1986, he was suspended from practice for one year and placed on probation for one year, for neglect of client matters and unprofessional conduct, which had occurred in 1981 and 1982. Also while practicing in California, applicant served two days in jail for contempt, relating to his presentation of the defense in a criminal jury trial, and was, on another occasion, fined $50.

Applicant's wife, who also was his sole employee, was murdered in September 1982. The crime has not been solved, but applicant believes that a former client was responsible. Following his wife's death, applicant moved to a rural area in southern Oregon. From late 1982 to late 1985, he was not employed; he used marijuana almost daily.

In August 1985, law enforcement officers raided applicant's property pursuant to a search warrant. They found 143 marijuana plants, ranging in size from tiny seedlings to tall plants, in a garden plot and window box. Also found were scales, a needle kit, books concerning drugs, a few small plastic bags of dried marijuana, and numerous firearms. In December 1985, applicant was convicted of manufacture of a controlled substance, ORS 475.992(1)(a), a Class A felony. He had no prior criminal record, and no additional charges were brought as a result of the 1985 incident.

Applicant was sentenced to community service and probation. He performed the community service at the Center for Non-Profit Legal Services, Inc., as a legal assistant. In July 1986, his probation was revoked for a threat of violence and for possession of firearms. He was sentenced to six months in jail and further probation. Applicant served the six months in jail. In March 1988, the circuit court granted an early termination of the extended probation.

After applicant disclosed the conviction to the California State Bar, it instituted a disciplinary proceeding. Applicant agreed to all pertinent facts and cooperated in the disciplinary process. He stipulated to a six-month suspension from practice followed by two and one-half years of monitored probation. The California Supreme Court accepted the stipulation by order dated April 29, 1989. Applicant served the six-month suspension without incident and has complied with all aspects of the monitored probation, including quarterly

reporting. If the probation is not violated, it will end on April 30, 1992.

Applicant testified that he has not used drugs since the revocation of his probation in 1986. He described his incarceration as a turning point. After serving the jail sentence, in early 1987 he again became employed at the same legal services office as a legal assistant. At the time of the hearing, applicant remained in that position. His supervisor testified that applicant was committed to the legal services program and that he would be hired as a staff attorney there, if admitted. That also was applicant's desire. His supervisor and coworkers praised applicant's legal skills and rehabilitation and gave their unqualified recommendation for his admission.

In addition, applicant became active in a nonprofit drug and alcohol rehabilitation and counseling program that serves the Jackson County area, and became president of the organization's board of directors. The executive director of the program, a clinical psychologist, recommended applicant's admission without qualification. She praised his work with clients and his leadership on the program's board. In her professional opinion, applicant's antisocial behavior after his wife's death, from 1982 to the incarceration in 1986, was an aberration that he would not repeat in the future.

At the time of argument, applicant was 46 years old, had two adult daughters, and was remarried.

## ANALYSIS

Applicant has the burden to establish by clear and convincing evidence that he is of good moral character. ORS 9.220(2); BR 7.5; Rule for Admission 1.55. As was the case in *In re Rowell,* 305 Or 584, 754 P2d 905 (1988), applicant concedes that his past conduct shows that he did not previously have the good moral character necessary to his admission as an attorney. "The question is therefore whether applicant's moral character has changed sufficiently that he should be admitted to the practice of law." 305 Or at 588.

Had we disbarred an attorney in applicant's position, the disbarred attorney would not be permitted to apply for reinstatement until five years after the effective date of the disbarment. BR 6.1(d). We do not believe that an applicant for

admission should be in a more favorable position than a similarly situated attorney applying for reinstatement.

■ Applicant committed criminal acts that reflected adversely on his honesty, trustworthiness, and fitness to practice law and engaged in conduct prejudicial to the administration of justice, in violation of DR 1-102(A)(2) and (4). ORS 9.527(4); *see generally* ABA Standards for Imposing Lawyer Sanctions § 5.1 (failure to maintain personal integrity). Four factors lead us to conclude that we likely would have disbarred him for those violations: (1) the seriousness of the crime of which applicant was convicted; (2) the length of time during which criminal conduct occurred; (3) the commission of more than one offense; and (4) the presence of aggravating factors. First, the acts were serious; they included a Class A felony and a threat of violence. *See* ORS 9.527(2) (Supreme Court may disbar attorney for conviction of a felony). Second, applicant's criminal behavior extended over a substantial period — over three years by his own admission. Third, applicant committed two distinct kinds of acts, manufacture of a controlled substance by cultivating marijuana and violation of probation for a threat of violence and for possession of firearms, which he knew was illegal. Fourth, aggravating factors were present: prior discipline (albeit for a different kind of conduct in a different state) and selfish motives, particularly in the circumstances of the threat that precipitated the revocation of probation, in addition to a pattern of criminal conduct over time and multiple offenses. *See* ABA Standard § 9.22 (listing aggravating factors). Mitigating factors — personal or emotional problems, cooperation in the disciplinary proceedings, and subsequent remorse — were not sufficient to offset the aggravating factors. *See* ABA Standard § 9.32 (listing mitigating factors).

We utilize the five-year reinstatement, not to add complication to the admissions process, but to bring a certain amount of consistency and symmetry to the overall issue of who is (and who is not) entitled to practice law in this state. The Board of Bar Examiners (Board) is charged with determining, in the first instance, whether an applicant has the requisite good moral character for admission. Commission of prior felonies, or misdemeanors involving moral turpitude, is relevant to that determination. Until now, however, the Board has not received guidance from this court as to how to weigh such a criminal

history in making its assessment of present moral character. The answer to that question should now be clear: If this court would have disbarred a lawyer for engaging in a course of criminal conduct, resulting in ineligibility for a five-year period, an applicant is ineligible for the same period.[2]

Of course, because applicant was not in fact disbarred, we cannot measure five years from the effective date of disbarment. The most closely analogous date in this instance is the date on which applicant's probation was revoked; that is the date on which the most recent misconduct was adjudicated. Accordingly, applicant may reapply for admission after July 23, 1991. Applicant thereafter must (as an applicant for reinstatement would have to do) establish by clear and convincing evidence that he is rehabilitated and presently possesses the necessary good moral character for admission (or readmission).[3]

One more point must be made regarding the application of the five-year reinstatement period to applicants for first-time admission to the Oregon State Bar. Obviously, before membership in the bar, an applicant's conduct is not regulated by the high standards governing attorney behavior. The question therefore arises whether prior acts by an applicant that would not necessarily lead to criminal charges, but would result in an attorney's disbarment, should prevent admission of the applicant for the full five-year period. There is no fixed answer to that question. Some acts, although not criminal, may be of such a nature as to demonstrate outright inconsistency with the practice of law. The Board should use our prior disciplinary cases resulting in disbarment as a guide in performing its function in eligibility cases. Those precedents discuss eligibility for readmission and may serve as analogies for cases of first-time admission.

## CONCLUSION

Applicant's reapplication for admission to the Oregon State Bar is denied with leave to reapply after July 23, 1991.

---

[2] We recognize that we did not apply this analysis in *In re Rowell*, 305 Or 584, 754 P2d 905 (1988); the analysis was not considered there.

[3] Nothing in this opinion should be construed to comment on the merits of a future application, if one is made.