Argued and submitted May 13, applicant's application for admission to Oregon State Bar denied July 18, 2002

In the Matter of
the Application for Admission to the
Bar of the State of Oregon,

JAMES JEFFERSON CARTER,
*Applicant.*

(SC S47312)

49 P3d 792

Peter L. Barnhisel, of Barnhisel, Willis, Barlow & Stephens, P.C., Corvallis, argued the cause and filed the briefs for applicant.

Jeffrey D. Sapiro, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Board of Bar Examiners.

PER CURIAM

## PER CURIAM

The issue in this contested lawyer admission proceeding is whether applicant James Jefferson Carter should be admitted to the Oregon State Bar (Bar). The Board of Bar Examiners (Board) recommends that this court deny applicant's application for admission to practice law. Applicant contends that he has proved by clear and convincing evidence that he possesses the fitness and good moral character necessary for admission to the practice of law in Oregon and requests that this court admit him despite the Board recommendation. After a *de novo* review of the record, we conclude that applicant should not be admitted to the practice of law at this time.

Applicant began attending the University of Oregon law school in the fall of 1995. In October 1995, he went to Lake Oswego to visit his parents for the weekend. While there, he learned that two of his family members had been suffering serious health problems, and he became distraught over the news. When applicant was returning home to Eugene late in the evening at the end of the weekend, he became so upset that he pulled over to the side of the road to collect himself. At that moment, he happened to be near the Wilsonville offices of a computer firm, In Focus, where he previously had been employed for about six months. He drove into the In Focus parking lot.

Applicant still had his employee access card in his car, and he decided to enter the building to "take something." He emptied out two gym bags that he had in the car and brought them into the building. After wandering about the office for a few minutes, he loaded up the gym bags with about $5,000 worth of computer equipment, put the loaded bags back in the car, drove to Eugene, and took the stolen items into his apartment. Over the next several days, the accused deleted files from the stolen computer's hard drive in an effort to hide the fact that he had taken it from In Focus.

Applicant's entry into the In Focus building and his removal of the computer equipment were captured on a security video. Applicant's former employer identified him from the video, and a deputy from the Clackamas County Sheriff's

Office contacted him 10 days after the incident. Applicant denied that he had been in the In Focus building since he ceased his employment there and denied that he had stolen anything from In Focus. He also told the deputy that he had returned the key card and that he had been in Eugene the entire day on which the theft occurred. Applicant continued to deny involvement in the theft even after the sheriff told him that his acts had been recorded on the surveillance video.

The next day, applicant contacted a lawyer, who arranged for the stolen equipment to be returned. In January 1996, applicant was indicted on one count of burglary, in violation of ORS 164.215, and on one count of theft, in violation of ORS 164.055. Applicant never was tried or convicted of the In Focus crimes. With the help of his lawyer, applicant and In Focus entered into a civil compromise in July 1997, and a circuit court later dismissed the criminal charges.

Soon after he was indicted, applicant began counseling, ostensibly to explore why he had committed the theft. Applicant discontinued his counseling sessions that fall, at the beginning of his third year of law school.

In March 1998, applicant applied for admission to the practice of law. In that application, he fully disclosed the circumstances of the crime. He also informed the Bar that twice earlier he had been caught shoplifting, once as a 13-year-old and once in college. The Board began an investigation. As part of that investigation, the Board requested applicant to undergo a general character evaluation by a psychologist.

The psychologist reported that applicant had been a very intelligent and precocious youngster and that applicant's parents believed early on that he was not being challenged adequately in school. For that reason, his parents enrolled him in high school at the age of 12. Applicant's immaturity relative to that of his classmates led him to suffer various social difficulties. According to the psychologist, that, in turn, led applicant to develop various psychological coping mechanisms such as, eventually, narcissism, which enabled him to view himself as superior despite feelings of inadequacy, and a tendency to repress unpleasant or difficult matters. The psychologist concluded that applicant's personality

combines several traits indicative of narcissistic personality disorder and of passive-aggressive personality disorder. Although applicant does not have sufficient traits of either disorder to meet the diagnostic criteria for a personality disorder, and although those personality traits are well-controlled nearly all the time, his defenses weaken under stress and those personality traits are likely to create problems for him from time to time. The psychologist also was troubled by applicant's lack of insight; according to the psychologist, applicant continues to have difficulty understanding and articulating his motivation for the In Focus theft.

In November 1999, the Board notified applicant that it would recommend that he be admitted to the Bar conditionally, subject to certain probationary terms. Those terms included, among other things, that applicant be placed under the supervision of a mentor and that he enter into long-term therapy to address the personality traits that led to the In Focus incident. Applicant agreed and signed a Conditional Admission Agreement in January 2000. The Board submitted that agreement to this court, together with its recommendation that applicant be admitted conditionally to the practice of law. This court rejected that recommendation and remanded the matter for a character review proceeding.

A three-member panel of the Board held a character and fitness evidentiary hearing in November 2000. Applicant represented himself at that hearing. Notwithstanding having been informed that he bore the burden of proof at the hearing,[1] applicant presented no personal or professional references or other evidence to establish his current good character. Instead, at the beginning of the hearing, he told the Board panel that he did not know how to go about proving his fitness and good moral character, and asked the panel members to suggest what type of evidence he should provide. The panel declined to make any suggestions; rather, it referred applicant to the rules for admission.

---

[1] The Board twice provided applicant with a copy of the Oregon State Bar's *Rules for Admission* and specifically informed applicant that he bore the burden of proof at the hearing. Rule for Admission 9.45(6) provides:

"Burden of Proof. To be entitled to admission to the practice of law in Oregon, an applicant must establish by clear and convincing evidence that she or he has the requisite character and fitness to practice law."

In April 2001, the hearing panel sent applicant a copy of its proposed decision recommending against admitting him to the Bar. Thereafter, applicant retained counsel. In May 2001, applicant excepted to the proposed decision of the hearing panel. In June 2001, the Board notified applicant that it rejected those exceptions; the panel issued its decision recommending that this court deny applicant's application to practice law. In July 2001, applicant filed a motion in this court to present additional evidence, in which he requested leave to offer three third-party character references. The Bar objected to that motion and, in October 2001, this court denied it.

The Board based its decision not to recommend applicant for admission on several factors. First, the Board noted that applicant's conduct was of a type that could have (but would not necessarily have) led to disbarment, had it occurred while applicant was a practicing lawyer. Using the ABA Standards as guidelines, the Board took note of the presence of the following mitigating factors: (1) personal or emotional problems; (2) full and free disclosure to the Board and cooperative attitude in the proceedings; (3) good character or reputation; (4) interim rehabilitation; and (5) remorse. The Board viewed as an aggravating factor applicant's conduct immediately after the theft, including his repeated denials of involvement and his efforts to conceal the crime. The Board found that that post-crime conduct cast substantial doubt on applicant's honesty, fairness, and respect for the rights of others and for the law.

Although the Board considered the theft to be a single and anomalous act of misconduct that was out of character with applicant's general behavior, it found that his acts of restitution and remorse did not commence until he was caught. The Board also was concerned about the absence of any current personal or professional character evidence in the record supporting applicant's request for admission, particularly in light of the fact that the theft occurred five years before the hearing. Finally, the Board observed that, although applicant attributed his conduct to the stress created by his family situation, that stress was not so abnormal or unique as to eliminate the risk of a recurrence in the

future. Moreover, the Board was concerned that, notwithstanding the psychologist's recommendation that applicant enter into long-term therapy to address the underlying psychological reasons for his behavior, applicant had not done so. In those circumstances, the Board concluded that applicant had not proved by clear and convincing evidence that he would be able to withstand the stress of the legal profession and that, consequently, he had not met his burden of proving that he possesses the requisite good moral character and fitness to practice law.

 An applicant for admission to the Bar must show that he or she presently is a person of good moral character. ORS 9.220(2)(a). An applicant must prove that he has the requisite character by clear and convincing evidence. *In re Rowell*, 305 Or 584, 588, 754 P2d 905 (1988). That standard requires an applicant to show that it is "highly probable" that he has good moral character. *In re Monaco*, 317 Or 366, 370 n 4, 856 P2d 311 (1993). Any significant doubts about an applicant's character should be resolved in favor of protecting the public by denying admission to the applicant. *In re Jaffee*, 319 Or 172, 177, 874 P2d 1299 (1994).

██ "[A]cts or conduct" that "reflect moral turpitude" or that "would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation" may demonstrate a lack of good moral character. ORS 9.220(2)(b). Theft is an act of misconduct involving moral turpitude. *In re Kimmell*, 332 Or 480, 491, 31 P3d 414 (2001); *see also In re Sonderen*, 303 Or 129, 133, 734 P2d 348 (1987) ("in order to involve moral turpitude, [the conduct] must require intent and must include as an element fraud, deceit, dishonesty, harm to a specific victim or illegal activity undertaken for personal gain"). Accordingly, applicant's misconduct related to and surrounding the In Focus theft demonstrates that, at that time, applicant did not possess good moral character.[2]

---

[2] Applicant was not convicted of theft, but such a conviction is not necessary to establish a lack of good moral character. As noted, ORS 9.220(b) refers to "acts or conduct." Thus, it is sufficient that the record show that an applicant committed acts that constitute the offense. *See, e.g., Kimmell*, 332 Or at 485 (holding, in disciplinary context, that, because disciplinary action for violation of Disciplinary

■ Given that circumstance, the crucial inquiry is whether applicant's character has reformed sufficiently in the interim to permit his admission to the Bar. *Jaffee*, 319 Or at 177; *Rowell*, 305 Or at 588. In his brief to this court, applicant contends that "he has met his burden of proof of present good moral character in essentially the only way he can, and that is by his actions since the event." By that, he means remaining crime-free and pursuing his academic goals of, among other things, completing law school, passing the Oregon Bar Examination, and pursuing an electrical engineering degree.

This court has observed that reformation is difficult, but not impossible, to prove to the court's satisfaction. *Jaffee*, 319 Or at 177. The court has considered, as evidence of reformation, character testimony from those who know and have had an opportunity to observe the applicant, participation in activities that benefit society, and an applicant's forthright acknowledgment of the wrongfulness of his or her past actions. *Jaffee*, 319 Or at 178; *Rowell*, 305 Or at 590-91. In the present proceeding, however, applicant has not offered any evidence from which this court could conclude that applicant's character has reformed sufficiently to permit his admission to the Bar.

■ Relatedly, applicant contends that the Board erred in failing to give him the opportunity to present additional evidence. He asserts that the character hearing should not have been an adversarial proceeding and that, considering the importance of the proceeding, applicant's obvious inexperience, and the fact that applicant appeared *pro se*, the Board should have "advised [him] of the importance of such current [character] references."

Applicant misapprehends the Board's role. The Board's role is not to protect applicant. Instead, it is to protect the public through proceedings like those that it conducted in applicant's case. Applicant was fully informed that he bore the burden of proof to establish his good moral character and fitness to practice. It was incumbent on him to prepare for the hearing so that he would know the type of evidence that the

Rule 1-102(A)(2) and (3) is based on accused's conduct rather than on accused's conviction, proof of conviction was not required to find a violation).

Board and this court have in the past considered in determining whether an applicant has established meaningful character reformation. Applicant's statements that he has reformed, without more, are insufficient.

Applicant's application for admission to the Oregon State Bar is denied.