Argued and submitted December 6, application for reinstatement allowed December 21, 1982

In the Matter of the Application of

## RUSSELL D. BEVANS

for reinstatement as an Active
Member of the Oregon State Bar.

(SC 28036)

655 P2d 573

Richard E. Miller, Eugene, argued the cause for applicant. With him on the briefs was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Paul D. Clayton, Eugene, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is a proceeding upon an application for reinstatement to membership in the Oregon State Bar. On July 10, 1981, applicant was convicted upon his guilty plea of a misdemeanor involving moral turpitude. The next day he informed the Supreme Court by letter. On October 14, 1981, this court summarily suspended applicant from the practice of law pursuant to Section 4, Rules of Procedure.[1] Within the month, applicant applied for reinstatement. Pursuant to ORS 9.525, the court directed that the matter be heard by a trial board and then, pursuant to ORS 9.535, reviewed by the disciplinary review board.[2]

After an extensive hearing by the trial board we have the benefit of fully developed facts as well as especially thoughtful majority and separate opinions from both the trial board and the disciplinary review board. All agreed that the applicant should be reinstated after a period of suspension. They disagreed as to the length of suspension adequate for an appropriate sanction.

Because reinstatement proceedings are infrequent and there has been some procedural uncertainty in the course of this proceeding, we first address certain procedural aspects of the case.

It is important to recognize that a Section 4 suspension for conviction of crime is a discrete proceeding. It is not and should not be confused with a disciplinary proceeding. Section 6 expressly states the existence of a Section 4 suspension does not preclude a disciplinary

---

[1] At the time of the suspension, Section 4 provided:

"If it appears to the court that a member has been convicted of a misdemeanor involving moral turpitude or of a felony, the court may suspend such member summarily. * * * Rules of procedure relative to discipline do not apply to a suspension under this rule. The suspension continues until the former member is reinstated by the court. * * *"

Section 4 was amended on May 14, 1982, and now provides for a more elaborate procedure with the option of initiating a related disciplinary proceeding.

[2] At times relevant to this matter, no rule governed proceedings on an application for reinstatement by a person suspended under Section 4, Rules of Procedure. Sections 18, 20 and 21 have since been amended to include this class of applicant and to allow expeditious rulings on applications for reinstatement with a hearing at the option of an applicant.

proceeding. Such a suspension, like that in a disciplinary proceeding, is for the protection of the public, but a Section 4 suspension is indefinite whereas a disciplinary sanction can be for a term. A suspension under Section 4 ends only if the member is reinstated by action of the court. (The current version, Section 4(e), provides for suspension "until further order of the court.")

Section 18, now applicable to reinstatements following Section 4 suspensions, states rules which were applicable to this proceeding only as a matter of general principle. It requires that a suspended member seeking reinstatement must do so by formal application. Section 18(b) specifies that the applicant must show that "he or she has good moral character, general fitness to practice law and that his or her resumption of the practice of law in this state will not be detrimental to the administration of justice or the public interest."[3] At a hearing upon an application, the burden is upon the applicant, because if no showing is made, the suspension would continue indefinitely. The applicant must prove that the allegations in the application regarding his or her present moral character and fitness are true. The grounds of the suspension are not placed in issue by the application except as they may reflect upon the applicant's present state.[4] If the applicant successfully makes a showing, the application for reinstatement is to be allowed and the suspension terminated; if not, the application is to be denied and the suspension continued. Conceivably, a termination may be conditioned, but we need not decide that in this case.

Here, the application is not in the words of the rule, but the allegations embody the same notions.

---

[3] ORS 9.220(2)(b) defines "good moral character" as that term applies to Supreme Court suspensions under ORS 9.480:

"* * * '[G]ood moral character' means conduct not restricted to those acts that reflect moral turpitude, but rather extending to acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation. The conduct in question should be rationally connected to the applicant's fitness to practice law."

[4] Section 4 now provides a procedure to be followed if the suspended person wishes to challenge the validity of a proposed suspension. In this case there was no question but that the misdemeanor involved moral turpitude and that the applicant was the person so convicted.

Applicant's evidence persuades us that the averments of his application are true. Although the crime for which he was convicted unquestionably involved moral turpitude, we are persuaded that it does not reflect upon his present moral character and fitness. It arose from his personal rather than professional life. Applicant recognized the wrongfulness of his unlawful conduct and discontinued it a year before it was reported. He has dealt forthrightly and constructively with his problems, never minimizing them or casting responsibility upon others. In this respect, *compare In re Easton,* 289 Or 99, 610 P2d 270 (1980), with *In re Jolles,* 235 Or 262, 383 P2d 388 (1963). Psychological counseling has been effective. The extraordinary degree of positive intervention and monitoring by the applicant's church, combined with the applicant's wholehearted participation, has been an unusually effective resource in this case. Except for this transgression, applicant's record as a member of his family, his church and his community has been exemplary. We accept his colleagues' and clients' estimates of his competence and trustworthiness in the practice of law. Viewed in that context, applicant's crime appears to have been an uncharacteristic act, the like of which is unlikely to recur. We find that it no longer reflects adversely upon applicant's ability to practice law.

The Bar, the trial Board and the disciplinary review board dwelt on applicant's post-suspension conduct. In several respects, such as the continued use of the applicant's name on the outdoor sign and letterhead of the firm, the applicant's separation from the practice of law was less than complete. Since then, the applicant has completely detached himself from his law firm. We are persuaded that the earlier acts occurred because applicant and members of his firm believed that the suspension would be temporary and short-lived. They did not anticipate the protracted proceeding that this has become. Although we do not approve of applicant's failure to completely sever himself from his practice, we do not find that his conduct in this respect reflects adversely upon his present moral character and fitness to practice law.

We find that the applicant is presently possessed of good moral character and is generally fit to practice law. We further find that his resumption of the practice of law

will not be detrimental to the administration of justice or the public interest.

Application for reinstatement allowed. No costs awarded.