Submitted on record June 10, reinstatement denied July 23, 1985

In the Matter of the Application of

**R. BEN GRAHAM, JR.,**
For Reinstatement as an Active
Member of the Oregon State Bar.

(SC 29730)

703 P2d 970

PER CURIAM

## PER CURIAM

We are asked to reinstate R. Ben Graham, Jr. (applicant) as an active member of the Oregon State Bar, BR 8.4-8.10. Applicant resigned as an active member effective September 21, 1976, after proceedings for unethical conduct had been commenced against him. The Trial Panel recommends that applicant should not be reinstated to the practice of law. We agree and deny the application.

A detailed statement of the facts is required to explain the posture of this case. Applicant was first before this court in his original application for admission to the practice of law in 1968. The Board of Bar Examiners had recommended that he be denied admission because of his conviction for theft of a number of colonies of bees which occurred when he was sixteen and seventeen years old. The Trial Panel concluded, however, that the facts "standing alone and in the absence of a subsequent course of conduct continuing to reflect to the discredit of the applicant, do not warrant denying applicant admission to the Bar." Further, "the conduct of the applicant as disclosed by ample and positive evidence adduced at this proceeding evidences a rehabilitation of the applicant and that applicant is now a person of good moral character and generally fit to practice law in the State of Oregon." This court approved the admission of applicant to the practice of law.

Applicant was accused, in 1976, of the following acts which are set out from the complaint.

First cause:

"On or about January 16, 1976, the Accused was charged with and arrested for a traffic offense in the City of Monmouth, State of Oregon. In posting bail for the said traffic offense, the Accused executed and delivered to the City of Monmouth a check upon the clients' trust account of Ben Graham, Jr., in the amount of $305.00."

Second cause:

"On or about October 20, 1975, there was a personal judgment entered against the Accused as a result of a motion for summary judgment filed in Polk County Circuit Court, Case No. 22587. Immediately before the said judgment was entered, the Accused, well knowing that he was not going to

oppose the motion for summary judgment, conveyed an interest of substantial value in real property in Polk County, Oregon, to a close relative of the Accused, without any monetary consideration and for no other consideration than love and affection. The said conveyance was for the purpose of circumventing, avoiding and defrauding creditors."

Third cause:

"During the year 1974, including September and October of that year, the Accused was the attorney for Peter Haslebacher. The Accused, as the attorney for Haslebacher, had the confidence of said client. Haslebacher, at the request of the Accused, loaned to the Accused, on or about September 27, 1974, the sum of $15,000.00. The Accused gave to Haslebacher, as security for the said loan, a mortgage upon certain real property. The Accused represented to Haslebacher that the said mortgage was good security for the said loan, and the Accused did not advise Haslebacher that the said mortgage was in fact a second mortgage upon the real property and that the first mortgage was in default. The Accused further failed to advise Haslebacher that the Accused's wife had an interest in the property, as the Accused and his wife owned said property as tenants by the entirety. The Accused represented that he was the owner of the said real property, and only the Accused signed the note and mortgage to Haslebacher. The Accused misrepresented and misled his said client in informing him of the security, the type of security and the interest that the Accused had in said property; and the Accused improperly used his attorney-client relationship with Haslebacher to acquire and close the said loan as set forth above."

Fourth cause:

"Family Federal Savings and Loan Association thereafter commenced a mortgage foreclosure upon the said real property. The Accused, his wife, his father and Peter Haslebacher were named as defendants in the said foreclosure. The Accused filed an answer on behalf of himself, his wife, Laura L. Graham, his father, R. B. Graham, and on behalf of Peter Haslebacher. The said named defendants had conflicting interests."

Fifth cause:

"The Accused has, since on or about March 24, 1975, been the personal representative of the estate of Chester W. Henkle, deceased, and has, during most of that time, also been

the attorney for the personal representative of the estate of Chester W. Henkle, deceased. The following improper and unethical conduct has taken place in the administration of the said estate:

"(1) The Accused has made partial distributions to the devisees of the estate without filing a petition for the same and without acquiring a court order for the said partial distributions.

"(2) The Accused has paid to himself attorney fees and personal representative fees in excess of $40,000.00, without a court order approving the same.

"(3) The Accused has failed to keep adequate accounts in the said estate.

"(4) The Accused has failed to make timely filings of the necessary tax returns for said estate.

"(5) The Accused represented to the devisees of the estate that certain checks written by the personal representative were for time deposits at the Bank of Willamette Valley or other banks; and, in fact, the said checks were actually payments to the Accused."

Sixth cause:

"During 1975, the Accused advised his client, Mary F. Berry, to have her employer place, not only the name of Mary F. Berry, but also the name of the Accused, upon the said client's paychecks. Thereafter, and at a time when there were executions and garnishments outstanding against the paychecks of said client Berry, seven checks were in fact made out to the client Berry and the Accused; and the Accused paid all of these checks or sums or nearly all of the said checks or sums to the client Berry. The above action and conduct was without legal basis and was done to avoid, circumvent and defraud the creditor or creditors of client Berry. In answer to allegations and interrogatories on the execution and garnishment, the Accused filed an answer stating that he had received two checks from the said employer of Berry, when in fact he had received seven checks."

Seventh cause:

"In 1972, the Accused represented one William M. Cannon against Mr. Cannon's wife, Bertha E. Cannon, in a proceeding for separation from bed and board. On September 11, 1972, a decree of separation from bed and board was entered, awarding to William M. Cannon real property consisting of a dwelling house located at 602 Levens Street,

Dallas, Oregon. William M. Cannon was of an advanced age, and the Accused occupied a position of confidence with William M. Cannon. The said real property awarded to William M. Cannon was not mortgaged and was of a value in excess of $12,000.00. By using his relationship with his client, William M. Cannon, the Accused did, four days after the entry of the decree of separation from bed and board, on September 15, 1972, prevail upon the said William M. Cannon to deed the said real property to the Accused."

Eighth cause:

"The Accused has in the past owned or had an interest in a tavern or related business located in or near Roseburg, Oregon. In paying personal obligations and obligations of the said business, the Accused used checks drawn on his clients' trust account, including but not limited to a check dated January 30, 1974, in the amount of $1,500.00 payable to a Mr. Voepel, and a check in the amount of $700.00, payable to Welter's Food Service for a dishwasher."

Ninth Cause:

"The Accused has, in his practice, carried on a course of conduct that is unprofessional and dilatory; and he has failed to represent his clients adquately. Two of said occasions are as follows:

"(a)  The Accused was retained by one Hazel E. Hirschy to open a conservatorship for two retarded people. In this relationship, the Accused was unprofessional, dilatory and failed to adequately represent his client as follows:

"(1)  The Accused failed to report and respond to his client.

"(2)  The Accused failed to follow the client's wishes, namely to keep the said conservatorships open.

"(3)  The Accused paid himself a fee in the said conservatorships, without a court order approving or directing the same.

"(b)  The Accused represented one Sherry Lukins; and, in so doing, he was unprofessional, dilatory and failed to adequately to represent his client as follows:

"(1)  He failed to report and respond to the client.

"(2)  He failed to file documents as represented and agreed.

"(3)  He failed to advise his client."

Tenth cause:

"In November, 1975, one Cecil Roy Ahrens was, in the Polk County Circuit Court, charged with the crime of robbery in the third degree. The Accused was the court-appointed attorney for the said Cecil Ray Ahrens. The Accused submitted a statement, as court-appointed attorney, in the amount of $112.50 and was paid said sum by order of the court. The Accused made charges to Cecil Roy Ahrens for attorney fees for said representation and was paid by said Cecil Roy Ahrens the sum of $150.00; and the Accused has, since the disposition of the said case, continued to submit a statement to the said Cecil Roy Ahrens asserting that the said Cecil Roy Ahrens still owes the Accused the sum of $105.00. The Accused never advised the Circuit Court of Polk County that said Cecil Roy Ahrens paid the Accused any attorney fees or that the Accused was collecting attorney fees from the [said] Cecil Roy Ahrens. In addition, the Accused received $180.00 from Cecil Roy Ahrens for the purported purpose of making restitution to the victim. Such restitution was never requested, such restitution was never made, and said funds have never been returned to Cecil Roy Ahrens."

Eleventh cause:

"The aforesaid conduct and course of conduct of the Accused, alleged hereinabove in causes first to and including tenth of this complaint, taken in the aggregate, was and is detrimental and prejudicial to the honor, integrity and standing of the profession of lawyer, the practice of law and the administration of justice in this state, and was and is subversive to the public interest; it constituted and constitutes conduct rendering the Accused unfit to practice law in this state; and it was and is such conduct, in breach of the standards and rules of professional conduct established by law and by the Oregon State Bar, that, if the Accused were now applying for admission to practice in this state, or for admission to the Oregon State Bar, his application should be denied."

Applicant, in his resignation, stated that he was aware of the pending complaint and without admitting any of the allegations in the complaint tendered his resignation. He also stated,

"I understand any future application by me for reinstatement as a member of the Oregon State Bar will be treated as an application by one who has been suspended or disbarred for professional misconduct and, on such application, that I shall

not be entitled to a reconsideration or re-examination of the facts, complaints, allegations or charges on which this resignation is predicated."

In this proceeding the Bar claims that subsequent events demonstrate applicant's continuing lack of good moral character and general fitness to practice law. It recommends that his request for reinstatement be denied.

Upon this court's acceptance of the resignation, applicant was directed to deliver all his files into the physical custody of his attorney. Applicant failed to do that and on October 15, 1976, was ordered to show cause why he should not be held in contempt for failure to comply with the previous court order. Upon learning that the applicant had withdrawn money from his trust account, this court also ordered the officers and directors of the Bank of Willamette Valley of Dallas, Oregon, not to pay out any money from the trust account without further order of the court. Further, pursuant to a search warrant, applicant's legal files and account books were seized from his law offices.

In November 1977, applicant filed for bankruptcy. Included in the discharged debts totalling some $130,000 were obligations owed by applicant to former clients or arising out of litigation initiated against applicant by former clients. Applicant also failed to file income tax returns for the years 1973 through 1976 and there is a current tax liability of approximately $90,000. Applicant presently is subject to a continuing garnishment as a result of this liability.

Applicant claims that much of his professional and personal misfortunes are attributable to alcoholism but he claims to have recovered from the disease. He asserts that while there was some confusion and difficulty in transferring his legal files after the resignation, he did not ignore the court's order. He claims that while he has not made repayments to former clients, he is willing to do so. He contends that his failure to file income taxes does not demonstrate any continuing lack of good moral character and general fitness to practice law, and that he is fully rehabilitated and fit to practice law.

The Trial Panel, in recommending that applicant not

be reinstated, found that applicant had not "taken any significant meaningful steps to deal with his alcoholism which show evidence that his problem with alcohol has been resolved or significantly dealt with and is now under control and is not likely to be a problem for him in the future." The Trial Panel also found that applicant had not taken responsibility for his conduct involving former clients, he had not undertaken any restitution to these clients and he showed little remorse for the clients' losses. The Trial Panel indicated reservation about applicant's truthfulness and expressed its concern that applicant has not come to grips with the enormity of his past professional misconduct and that he "still blames persons and forces outside of himself as being the cause of his prior professional conduct."

From our review of the record we find much evidence that is favorable to applicant. After his resignation he went to Las Vegas, Nevada, where he has been employed as a senior law clerk in the district attorney's office. He is currently working in the appellate division but has worked in the criminal division and the consumer fraud division. The chief deputy of the criminal division, as well as the county counsel and chief deputy in the district attorney's office, testified in behalf of applicant. The latter, applicant's supervisor, testified that applicant is an "exemplary example of rehabilitation," that "he would bring credit to the profession" and that "whatever his misdeeds they are relegated to ancient history." The co-founder and currently active worker in Community Action Against Rape testified that applicant had been involved in breaking up a "child sex ring" and in prosecuting the responsible persons and that his personal qualities were outstanding in dealing with the victims and in handling the sensitive situations which were involved.

Applicant's goal is to be reinstated in Oregon so that he can take the Nevada Bar examination and become an attorney in the district attorney's office. The Nevada State Bar has told applicant that his reinstatement in Oregon is a prerequisite for permission to take the Nevada Bar examination.

Applicant is divorced from this first wife; there are four children by that marriage. Applicant is current in his child support obligations. There are four children by his

second marriage; all were under the age of six at the time of the hearing. There was testimony from a person who knows applicant and his wife as members of the Episcopal church who testified that applicant attends church regularly and is a good father and husband. Applicant's wife testified that he is a very different person now than when she met him; he no longer has a drinking problem and he has different ideas now about commitments and success. She was totally supportive of applicant's reinstatement.

We do not agree with the Trial Panel that applicant has not taken significant steps to control his alcoholism. During his first two years in Nevada he attended Alcoholics Anonymous regularly. He still attends meetings but not as regularly. Applicant explained that the untimely death of a friend from alcohol abuse had a significant impact on him and he credits his regular church attendance as a factor in helping him avoid the use of alcohol. He testified that he had had a drink or two in social situations since he has been in Nevada but the realization that the "old patterns could be repeated" has curbed any desire to drink socially. He is on self-administered antabuse and he has had no problem with alcohol interfering with his work or personal life. We conclude from this evidence that applicant has his alcohol problem under control at this time.

The primary deficiency in applicant's rehabilitation is his apparent lack of interest in informing himself of what money is owed to former clients and in making restitution to those former clients. Applicant does indicate his willingness to do so and suggests that he will be better able to do that if he can again be an attorney earning a better salary. However, in his testimony he indicated he had made no effort to determine what amounts he owed clients because he was not in a position to repay any of them. The evidence indicates that applicant confessed judgment in at least three instances. While applicant was uncertain about the amounts owed to former clients, he indicated that he would have no objection to renewing those debts waiving any statute of limitations defenses.

Applicant's financial situation, while subject to the expenses of a young family, is not bad. The combined earnings of applicant and his wife total a disposable annual income of $46,000. Applicant has worked at second jobs from time to

time to supplement his income. He worked as an assistant manager for a fast food delicatessen operation and as a taxi cab driver. He is currently teaching criminal law classes two evenings a week at Clark County Community College. The family income is subject to a monthly mortgage payment of $750, monthly child support payment of $300 and monthly babysitting expenses of $500. We recognize the many other expenses attendant to the raising of four children. However, we agree with the Trial Panel that applicant has not demonstrated his appreciation of the magnitude of misuse of client's funds and property. In order to demonstrate that, and as a prerequisite to rehabilitation, it is necessary that applicant take steps to learn exactly what is owed, if anything, to each of his former clients and to develop a plan to commence to repay those obligations. It is in this area of responsibility to clients that the Trial Panel expressed concern about applicant's truthfulness. We think it is not so much a lack of truthfulness as a lack of identifiable rehabilitation through a commitment to repay his former clients. Applicant may be able to achieve that, however.

Applicant has not at this time established by clear and convincing evidence that he has the requisite good moral character and general fitness to practice law or that his resumption of the practice of law in this state will not be detrimental to the administration of justice or the public interest. BR 8.9. For this reason we deny applicant's reinstatement to the Oregon State Bar.

Reinstatement denied. Costs are awarded to the Oregon State Bar.