Submitted on record and briefs July 6, application for reinstatement denied
November 16, 1989

In re Application of:

# GARY D. GORTMAKER

For Reinstatement to
the Practice of Law in Oregon.

(SC 27452)

782 P2d 421

Martha M. Hicks and Teresa J. Schmid, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, for the Oregon State Bar.

Gary D. Gortmaker *pro se.*

Before Peterson, Chief Justice, and Linde, Jones, Gillette, Van Hoomissen and Fadeley, Justices.

PER CURIAM

## PER CURIAM

Applicant Gary D. Gortmaker seeks reinstatement to membership in the Oregon State Bar (Bar). This court summarily suspended him from the practice of law in 1980 upon his conviction of crimes. The Bar's trial panel recommends against reinstatement. On *de novo* review, we deny reinstatement.

### I.

Applicant was admitted to practice law in Oregon in 1957 and served as Marion County District Attorney from 1965 until 1980. In 1980, he was charged with three counts of first degree theft, two counts of tampering with public records, two counts of unsworn falsification, and one count of first degree official misconduct, resulting from actions he took in his official capacity as District Attorney. After trial, a jury found him guilty of all eight counts.[1] His convictions were affirmed on appeal. *State v. Gortmaker,* 60 Or App 723, 655 P2d 575 (1982), *aff'd* 295 Or 505, 668 P2d 354 (1983), US *cert den* 465 US 1066 (1984).

In November 1980, this court summarily suspended applicant from the practice of law. *See former* Section 4, Oregon State Bar Rules of Procedure Relative to Admission, Discipline, or Resignation and Reinstatement (July 1978).[2]

In December 1987, applicant petitioned the Oregon State Bar for reinstatement. The Bar's Board of Governors

---

[1] The trial court issued three separate judgments: on one count of theft applicant received a sentence of "discharge" pursuant to ORS 137.010(5)(d); for official misconduct he was fined $500; on the state's motion, the remaining six counts were merged into a single count of first degree theft for which he was sentenced to a term of imprisonment not to exceed four years and ordered to pay Marion County $15,000 as partial restitution.

[2] *Former* Section 4 provided:

"If it appears to the court that a member has been convicted of a misdemeanor involving moral turpitude or of a felony, the court may suspend such member summarily. * * * Rules of procedure relative to discipline do not apply to a suspension under this rule. The suspension continues until the former member is reinstated by the court. If it is made to appear to the court that the conviction is reversed on appeal, the suspension imposed under this rule shall be lifted by the court."

Current BR 3.4(e) allows this court to refer the matter of whether an attorney should be disciplined to the Bar's Disciplinary Board, whether or not this court suspends the attorney upon conviction of a crime.

reviewed and forwarded the petition to this court with its recommendation against reinstatement. Applicant had 28 days to petition for review. *See* BR 8.6, *infra,* at n 4. He did not do so. In June 1988, we denied his reinstatement.

In August 1988, applicant requested that this court review the Board of Governors' adverse recommendation and terminate his suspension, or establish a date certain for his reinstatement.[3] The Bar opposed applicant's requests but did not oppose referring the matter to its Disciplinary Board for trial. *See* BR 8.6.[4] Applicant then moved to withdraw his

---

[3] We treated the submission as a request for relief from default and for an extension of time to file a petition for review of the Board's adverse recommendation. We granted relief and treated the document as a timely petition for review.

In support of his request, applicant cited ORS 670.280, which provides:

"Notwithstanding any other law, no licensing board or agency shall deny, suspend or revoke an occupational or professional license or certification solely for the reason that the applicant or licensee has been convicted of a crime, but it may consider the relationship of the facts which support the conviction and all intervening circumstances to the specific occupational or professional standards in determining the fitness of the person to receive or hold such license or certificate."

That statute has no relevance to this proceeding. The Supreme Court is not a "licensing board or agency" within the meaning of ORS 670.280.

ORS 9.529 provides:

"Bar proceedings relating to discipline, admission and reinstatement are neither civil nor criminal in nature. They are sui generis and within the inherent power of the Supreme Court to control. * * *"

The Supreme Court and not the Bar has final authority over bar proceedings relating to discipline, admission and reinstatement of attorneys in this state. ORS 9.527(2) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the Bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"(2) The member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state * * * in any of which cases the record of the conviction shall be conclusive evidence * * *."

*See In re Thomas,* 294 Or 505, 659 P2d 960 (1983); *State ex rel Robeson v. Oregon State Bar,* 291 Or 505, 632 P2d 1255 (1981).

[4] BR 8.6 provides:

"Not later than 28 days after the Bar files an adverse recommendation regarding the applicant with the Court, the applicant shall, if he or she desires to contest the Board's recommendation, file with the Disciplinary Counsel and the State Court Administrator a petition stating in substance that the applicant desires to have his or her case reviewed by the court. If the court considers it appropriate, it may refer the petition to the Disciplinary Board to inquire into the applicant's moral character and general fitness to practice law. Written notice shall be given by the State Court Administrator to Disciplinary Counsel and the applicant of such referral. The applicant's resignation, disbarment, suspension or inactive membership status shall remain in effect until final disposition of the petition by the court."

request for review, asking instead that we terminate his suspension without further involvement of the Disciplinary Board. We allowed him to withdraw his request for review and referred his application for reinstatement to the Disciplinary Board for trial.

In October 1988, the Bar filed its statement of objections to applicant's reinstatement, and he responded in November 1988. A Disciplinary Board trial panel heard the matter and filed its opinion in January 1989.[5] The trial panel concluded that applicant had not shown by clear and convincing evidence that he has the requisite good moral character and general fitness to practice law and that his resumption of the practice of law will not be detrimental to the administration of justice or the public interest. BR 8.10.[6] The trial panel recommended that his petition for reinstatement be denied.

In March 1989, applicant asked this court to terminate his summary suspension, to "discard" the trial panel's recommendation, to refer his case to a new trial panel or to refer his case to the original trial panel with instructions, and to stay these proceedings while he pursues post-conviction proceedings in the underlying criminal case.[7] The Bar opposed applicant's several motions and moved to strike them for non-compliance with ORAP 4.05, 7.05 and 7.23. We denied the

---

[5] Applicant challenges none of the trial panel's findings of fact.

[6] BR 8.10 provides:

"An applicant for reinstatement to the practice of law in Oregon shall have the burden of establishing by clear and convincing evidence that he or she has the requisite good moral character and general fitness to practice law, and that his or her resumption of the practice of law in this state will not be detrimental to the administration of justice or the public interest."

[7] Applicant contended that 1980 summary suspension violated due process, equal protection and separation of powers under the state and federal constitutions; that the trial panel was biased and employed the wrong standard in evaluating his evidence of rehabilitation; and that the trial panel erred in receiving certain evidence offered by the Bar. Apparently he has abandoned those contentions, because he has not pursued them in subsequent submission.

In July, 1988, applicant filed a petition for post conviction relief alleging that he was denied effective assistance of counsel in the 1980 criminal proceedings because: his trial attorney failed or neglected to adequately prepare for trial, investigate the charges, interview and use available witnesses, use available records and documents in applicant's defense, challenge the prosecution's records "now known to be erroneous and false," complete discovery, and obtain required and needed documents prior to trial. That proceeding is pending. *Gortmaker v. State of Oregon,* Marion County Circuit Court No. 88C-11038.

Bar's motion to strike and allowed applicant 28 days to petition for review.

In May 1989, applicant filed a "Petition for Modification of Panel Decision," a "Waiver of Brief," and a supporting memorandum, asking us "to consider *de novo* upon the record the recommendation of the Bar panel * * * and to modify in part the conclusions expressed" and to reinstate him "subject to conditions or otherwise." We treated those materials as a petition for review and a waiver of further briefing. Applicant waived oral argument. We now consider his application on the record and the parties' submissions.

## II.

■ The purpose of professional discipline is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to properly discharge their professional duties to their clients, the public, the legal system, and the legal profession. *See In re Germundson,* 301 Or 656, 664, 724 P2d 793 (1986); *In re Bristow,* 301 Or 194, 206, 721 P2d 437 (1986); *see also ABA Standards For Imposing Lawyer Sanctions* (1986) 1.1.

■ An applicant for reinstatement to the practice of law has the burden of establishing by clear and convincing evidence that he has the requisite good moral character and general fitness to practice law and that his resumption of the practice of law will not be detrimental to the administration of justice or the public interest. *See* BR 8.10, *supra; In re Graham,* 299 Or 511, 521, 703 P2d 970 (1985); *In re Bevans,* 294 Or 248, 251, 655 P2d 573 (1982). "Clear and convincing evidence" is evidence sufficient to establishes that the truth of the facts asserted is highly probable. *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 402, 737 P2d 595 (1987); *In re Johnson,* 300 Or 52, 55, 707 P2d 573 (1985). The Bar has the initial burden of producing evidence that an applicant should not be readmitted to practice. BR 8.11. The applicant for reinstatement, however, has the ultimate burden of proving good moral character and general fitness to practice law. This court reviews *de novo.* ORS 9.539; BR 10.6. On review, our primary focus is upon applicant's post-suspension conduct.

## III.

■ The record contains evidence supporting the trial panel's recommendation against reinstatement. First, applicant has failed to come to grips with his 1980 convictions. The trial panel concluded and we agree with its conclusion that:

"Mr. Gortmaker believes he was wrongly charged and convicted of the felony."

Applicant states that he does not believe he is guilty of the crimes for which he is convicted. He argues that it would not make him a better lawyer or demonstrate better character to acknowledge "a degree of guilt he did not truly feel or believe." He states that the record is not clear how much money he used illegally. He offers letters from "expert(s) in fiscal accounting and audits," apparently to persuade us that his 1980 jury convictions were wrongful or to minimize the extent of his crimes or both. He argues that the information in those letters makes it difficult for him to accept the magnitude of the charges against him. He also argues that he has grounds for post-conviction relief "because his trial attorney was unprepared and did not even appear on every day of the trial."

The grounds for applicant's suspension are relevant to his application for reinstatement only insofar as they reflect upon his present character and general fitness to practice law. *See In re Bevans, supra,* 294 Or at 251. We find instructive the comments of the trial judge who sentenced applicant in 1980. The trial judge summarized some of these comments as follows:

"The [trial judge commented that the] activities of Mr. Gortmaker were a gross breach of public trust; large sums of money were involved in the theft count; the actions of Mr. Gortmaker resulting in the thefts of money involved an elaborately planned scheme; and Mr. Gortmaker's conduct continued over a period of years.

"Further, the trial judge stated that this was not simply a case of theft and it was not simply a case of theft by a person who happened to be in a public office; rather, he said '* * * it's a case of theft of government funds and the theft of government funds were related to the conduct of his office. And his office was the chief law enforcement office of Marion County.'

"* * * * *

"4. In the same sentencing proceedings, the state and the

trial judge were not able to identify a precise amount of funds that had been stolen by Mr. Gortmaker. The court decided that if it was to err, it would err on the side of not imposing restitution in an excessive amount, and this resulted in the restitution order of $15,000."

We also find relevant the following remarks the trial court made at the sentencing hearing:

"The public lost a number of thousands of dollars because of this crime. But the loss of public funds is not the most serious aspect of the crime; rather, it's the loss of confidence in our institutions. There is a sizable cynical minority of * * * citizens who choose to believe that all elected officials are dishonest and that is shown by at least one of the letters that I read. The conviction in this case serves to confirm their suspicions and raises questions in the minds of many others as to the extent of official corruption. And I think that is the greatest harm that's done by the defendant in connection with this case."

Second, applicant also persists in minimizing the gravity of his crimes. The trial panel found:

"11. In his Application For Nursing Home Administrator Provisional License to the Board of Examiners of Nursing Home Administrators, dated october [sic] 8, 1987, Mr. Gortmaker stated he had been convicted of a felony, but that he had not been convicted of a crime involving moral turpitude. As a 'special explanation' on the application, Mr. Gortmaker explained his felony conviction as follows:

" 'In 1980 Gary Gortmaker received a Class C felony conviction. It was for, under the prosecutor's theory, receiving a benefit of more the [sic] $200. This was under the general statute entitled Theft. He was District Attorney at the time.

" 'Further information should tell that Mr. Gortmaker was NOT convicted of stealing, pocketing, embezzling or taking any money. The jury verdict was that from a budget of more than 3 million dollars, of which $166,000 was his discretionary funds as a public official, he benefited to the extent of $200.00 over a period of two years (1977 - 1979).'

"* * * * *

"16. Mr. Gortmaker acknowledges that some amount of money in excess of $200 was illegally used by him. He disagrees, however, that it was as much as $15,000. He said 'nobody knew' how much of it was illegally used."

The trial panel concluded and we agree:

> "[Applicant's] protestation that it was not as much as $15,000 demonstrates that he does not recognize and acknowledge the severity of what he did."

*See* ABA Standards For Imposing Lawyer Sanctions, *supra,* 5.1.

Third, applicant blames his trial attorney and the state's witnesses rather than himself for his convictions and subsequent suspension. The trial panel found:

> "12.  In Mr. Gortmaker's application for reinstatement as a member of the Oregon State Bar, he included as additional information a statement that at his criminal trial, he was confronted by the direct accusation of only one witness - Cheryl Jacobsen, a bookkeeper in Mr. Gortmaker's office, and that after his convictions for his 'alleged' 1977 to mid-1979 conduct, Cheryl Jacobsen was convicted two separate times for embezzlement."[8]

The trial panel also found:

> "7.  In 1983, after having served time in prison, and after the convictions as [*sic*] been affirmed on appeal, Mr. Gortmaker filed a civil action [against Jacobsen and several others] in Federal Court alleging generally, that he had been wrongfully convicted of a charge he did not commit as a result of the conspiracy and untruthful actions and statements on the part of the defendants named in that case. That case was dismissed by stipulation in 1984."[9]

As previously noted, applicant's petition for post-conviction relief, alleging the ineffective assistance of his 1980 trial counsel, is pending.

In sum, applicant's attitude throughout these proceedings can fairly be characterized as being that he was wrongly charged, unjustly convicted, and harshly punished and that any crimes he did commit are *de minimis.*

Fourth, there is evidence in the record that applicant

---

[8] Jacobsen, a key witness against applicant at his 1980 criminal trial, was herself convicted in 1982 of embezzlement of $16,940 from the Marion County Juvenile Department. She also was convicted in 1988 in Douglas County of Theft in the First Degree and was sentenced to five-years bench probation and ordered to pay $16,314.44 restitution.

[9] *Gortmaker v. Jacobsen,* USDC Or No. 813-6252-E.

practiced law while suspended or, at the very least, that he displayed a cavalier disregard for the truth by misrepresenting his status. The trial panel found:

"9.    During 1984-85, Mr. Gortmaker was a law clerk for a Salem attorney. The attorney and Mr. Gortmaker engaged in lengthy and detailed discussions about the delineation between the practice of law and law clerk functions. The purpose of such discussions was to make sure Mr. Gortmaker did not engage in the practice of law.

"10.    Subsequently, Mr. Gortmaker was employed by or under contract with a retirement and health care corporation, performing numerous functions. Included in correspondence dated November 24, 1987, Mr. Gortmaker made a demand on behalf of the corporation for over $100,000 damages, and the letter included the following: 'Because a land sale contract is involved allowing attorney's fees, said fees are demanded in the amount of $3,600 to date. Should this matter proceed to trial, the Court will be asked to allow a reasonable attorney's fee or fees.' That letter recites a copy was sent to a licensed attorney who testified he occasionally did legal work for the corporation.

"Prior to November 24, 1987, Mr. Gortmaker repeatedly identified himself in correspondence on the same matter as 'general counsel' and 'corporate counsel.'

"While so corresponding, Mr. Gortmaker knew his privilege to practice law had been suspended. Regarding the demand for $3600 attorney fees, Mr. Gortmaker knew he was not entitled to any attorney fees, and he knew no attorney had earned up to that date anywhere near that amount of fees on that matter. Further, he was not being supervised by a licensed attorney on the matters in question.

"As of December 22, 1987, Mr. Gortmaker began referring to himself as 'house council' [sic] as indicated in his December 22, 1987, Application for reinstatement as an active member of the Oregon State Bar, and in a January 19, 1988, letter regarding the retirement and health care corporation matter.

"Mr. Gortmaker stopped referring to himself as 'counsel' or 'council' when the attorney with whom he had discussed the delineation between attorneys and nonattorneys in

1984-85, (see paragraph nine herein), became aware of it and told him to stop doing it."[10]

Those findings are supported by the record and are not challenged by applicant. In our independent review of the record, we find that applicant misrepresented himself as an attorney and practiced law while suspended.

In *In re Kraus,* 295 Or 743, 670 P2d 1012 (1983), we stated:

"The continued practice of law after an order of this court suspending an attorney from the practice of law engenders 'substantial doubts about the individual's * * * respect for * * * the laws of the state' and therefore demonstrates a lack of good moral character. ORS 9.220(2)(b)."

In *Kraus,* we also recognized the high standard of conduct required of persons in the legal profession:

" 'The degree of truthfulness expected from a lawyer is higher than that expected from others.' The highest standard of conduct is necessary to retain the trust and confidence of the general public." (Quoting from *In re Jeffrey Steffen,* 279 Or 313, 317, 567 P2d 544 (1977).) 295 Or at 753.

*See In re J. Graham Killam,* 256 Or 297, 473 P2d 130 (1970) (reinstatement denied attorney who continued to hold himself out as licensed to practice law after resignation from bar); *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 490, 405 P2d 510, 407 P2d 250, *cert den* 384 US 943 (1966) (attorney must abide by suspension regardless of belief that the underlying conviction will be reversed).

Fifth, the record contains letters from several public officials, lawyers, and others, strongly opposing applicant's reinstatement. Included are letters from the current Marion County District Attorney, the Marion County Legal Counsel, the Executive Committee of the Oregon District Attorneys Association, a former Marion County deputy district attorney who had worked for applicant and had testified against him in 1980, and a member of the prosecution team during applicant's 1980 criminal trial. In essence, the letters' authors

---

[10] Applicant represented himself as "General Counsel" for the corporation in letters dated September 21, October 13, 14, 20 and 29, November 2, 16 and 18, and December 15, 1987; as "General Council [sic]" in a January 19, 1988 letter; and as "Corporate Counsel" in a October 15, 1987 letter.

assert that applicant is not a person of good moral character and that his resumption of the practice of law at this time would be detrimental to the administration of justice and/or the public interest.

We also find evidence in the record favorable to applicant. He acknowledges that he is an alcoholic and represents that his condition is presently under control. The Bar does not dispute his present sobriety. The trial panel found:

"13.   Mr. Gortmaker considers himself to be an alcoholic, and he was heavy into alcohol during 1977 through 1979.[11] Since then, he has been a recovering alcoholic and has been successful to date."

We conclude from the record that applicant's alcohol problem is presently under control.

Applicant also represents that he has performed more than 400 hours of volunteer service assisting senior citizens and, additionally, that he has spent "countless hours" as an advisor in community alcohol and drug support programs. The Bar does not dispute his representations. The trial panel made no finding of fact on this matter. We conclude from the record that applicant's representations concerning his volunteer community service are substantiated.

Applicant submitted several letters supporting his reinstatement, all of which assert that he is a person of good moral character and that his resumption of the practice of law at this time would not be detrimental to the administration of justice and/or the public interest.[12]

---

[11] The trial panel also found that although alcohol was a "major force" in applicant's life during 1977-79, it was not raised as a defense or in mitigation during his 1980 criminal trial.

[12] The trial panel observed that:

"The trial judge [at applicant's 1980 criminal trial] also acknowledged the many letters that had been submitted in support of Mr. Gortmaker, including letters from policeman [sic], doctors, and others. Such letters indicated faith in Mr. Gortmaker and belief in his good character. The court went on to say, however, that it felt if those individuals had been in the courtroom during the entire course of the trial, it did not think such supporters could have continued to entertain their views unless their friendships with Mr. Gortmaker clouded their judgments. The court went on to say that in its judgment, Mr. Gortmaker systematically and over a period of years stole money belonging to Marion County and used it for his own purposes, and that the money was in the sum of thousands of dollars."

A circuit judge states that, while he is not familiar with the evidence at applicant's trial, the judge does not feel that applicant was guilty of the crimes of which he was convicted. Another circuit judge states that applicant's conviction was an "aberration." He feels that people were surprised when applicant was convicted and that, "perhaps all the evidence did not come out." He has never discussed the facts of the 1980 criminal case with applicant. A third circuit judge, without commenting on applicant's 1980 convictions, also supports reinstatement. An attorney who has known applicant for many years states that he does not believe that applicant was guilty and that applicant has expressed remorse "about the criminal convictions" on a number of occasions. Another attorney states that applicant now believes that he misused county funds but that applicant also believes that "he did not put any money into his own pocket." A third attorney opines that there is a basis for applicant's post-conviction claim of ineffective assistance of trial counsel in 1980. He is satisfied, however, that applicant was not falsely accused nor wrongly convicted.[13]

## IV.

We agree with the trial panel's recommendation that applicant should not be reinstated to the practice of law. He has not demonstrated by clear and convincing evidence that it is "highly probable" either that he has the requisite good moral character and general fitness to practice law or that his resumption of the practice of law in this state will not be detrimental to the administration of justice or the public interest.

Applicant requests in the alternative that he be reinstated conditionally. In *In re Rowell,* 305 Or 584, 592, 754 P2d 905 (1988), we considered an analogous issue on another applicant's initial application for admission to practice law:

"A possibility has been raised that applicant should be admitted conditionally or on probation. We think, however,

---

[13] Although applicant argues that he has paid his debt to society by serving his prison sentence and paying restitution, we are not persuaded that those facts are relevant to our consideration of his petition for reinstatement. *See ABA Standards For Imposing Lawyer Sanctions, supra,* 9.4 (compelled restitution irrelevant to imposition of sanction). Applicant had no choice in these matters — the law required him to do them.

that if this court is convinced that applicant is presently of good moral character, he should be admitted. If the court is not convinced, his application for admission should be denied. If a lawyer is of good moral character, the lawyer should be able to start a legal career on the same basis as other lawyers." (Citation omitted.)

Our reasoning in *Rowell* is equally applicable to an application for reinstatement. Because we do not find applicant here qualified for reinstatement, we also deny him conditional reinstatement.

Application for reinstatement denied. Actual and necessary costs and disbursements incurred awarded to the Oregon State Bar. ORS 9.539; ORS 9.536(4); BR 10.7.