Argued and submitted April 5, 1989, application granted May 10, 1990

In the Matter of the Application of
# SOMTIM TOBIGA
for Admission to Practice Law
in the State of Oregon.

(SC S34149)

791 P2d 830

Somtim Tobiga, Portland, argued the cause and filed the brief *pro se* for applicant.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Phil Goldsmith, Thomas M. Steenson, Steenson & Schumann, Portland, filed a brief on behalf of *amicus curiae* National Lawyers' Guild.

Before Peterson, Chief Justice, and Linde,* Carson, Jones,** Gillette, Van Hoomissen, and Fadeley, Justices.

FADELEY, J.

Van Hoomissen, J., specially concurred and filed an opinion.

---

\* Linde, J., retired January 31, 1990.

\*\* Jones, J., resigned April 30, 1990.

## FADELEY, J.

This is a contested Bar admission case involving the Applicant, Somtim Tobiga, who graduated from Northwestern School of Law of Lewis and Clark College in 1983 and, on his seventh attempt, passed the February 1987 Bar Examination. However, the Board of Bar Examiners questioned whether he met the character qualifications for admission. We referred the matter to the Oregon State Bar, which filed three objections to his admission. A Trial Panel majority recommended against Applicant's admission. After *de novo* review, the court finds the Applicant of present good moral character and admits him.

### OBJECTIONS TO ADMISSION

The Oregon State Bar stated as objections to Applicant's admission that:

1. In 1985, Applicant was accused of shoplifting and agreed to a civil compromise before the charges were dismissed;

2. In October 1986, Applicant inaccurately answered a yes-or-no written question on an application for admission. He checked the "no" box to question 16(d), which asked, "Do you now have any accounts or obligations past due more than 60 days?" At that time, he owed about $1,300 to a collection agency on overdue loans made to him by the Oregon State Bar Affirmative Action Program between 1982 and April 1984.

3. Applicant was not credible or consistent in his explanations about the two foregoing events and was purposefully misleading in his various statements about the "no" answer.[1]

Applicant acknowledges that he had been charged with shoplifting, but not convicted, and that he owed money on the Bar loans when he answered "no" to the question. He argues that the "no" answer was a "mistake" and that the loans were repaid by May 20, 1987, shortly after he received a long-sought itemization of the amount owed. He denies intent to shoplift. He also denies that his explanations to the Bar were misleading or intended to deceive.

---

[1] The Bar also alleged, as objections to admission, that Applicant's conduct would violate specific Disciplinary Rules if the conduct were engaged in by a lawyer. In view of our disposition of the case, we do not discuss the relevance or appropriateness of applying Disciplinary Rules to admissions. Likewise, legal points made by Amicus and Applicant need not be addressed.

This case turns on the credibility or honesty of the Applicant. The Trial Panel found that neither the "shoplifting" charge nor the incorrect "no" answer in and of themselves justified its recommendation to deny admission to the Bar of this court. The Trial Panel stated: "Rather, it is the explanations of the failure to disclose the loans that compels our decision."

## FACTS

### A. The Loans

Applicant borrowed $10,050.27 in nine separate loans from the Bar's Affirmative Action program. Promissory notes covering five of the loans were entitled "Affirmative Action Program - Conditional Loan Program" and were dated variously from August 27, 1980, through September 16, 1982. One of the four remaining notes was entitled "Affirmative Action Program - Emergency Student Loan Program," was for $100.27, and was dated April 13, 1982. The seventh, eighth, and ninth notes were entitled "Affirmative Action Program - Bar Examination Loan Program" and were dated from April 23, 1982 through April 16, 1984.

On August 26, 1983, the Bar sent Applicant a one-sentence letter stating that:

> "'This is to confirm repayment of your conditional loan [sic] of $8,750 is waived due to your sitting for the July, 1983, Oregon Bar Exam."

The amount in this forgiveness letter totals the five separate "conditional loan program" notes, although by the time the letter was issued other loans had been made.

During late 1982 and early 1983, Applicant made small payments on the $100.27 emergency loan reducing the balance on that note to $47.82. By arrangement with the Bar's Affirmative Action Program, and based on a showing of inability to pay, all loans were deferred for payment until September 1, 1984. Applicant did not resume payments.

On July 15, 1985, the Bar mailed Applicant a certified letter to his former Scholls Ferry Road address stating that the full principal balance on four loans would be accelerated and declared due "if we do not hear from you" and that the accounts would be turned over to the Bar's collection agency for further action

"[i]f we have not heard from you by July 2$, 31 [sic] 1985."

The Applicant received this letter August 1. In the case of other certified letters which, if received, would tend to demonstrate inconsistencies in the Applicant's explanations, the certified mail form numbers do not match up and there are no return postcards showing receipt of the letters.

On August 12, 1985, the Bar wrote Applicant, by letter addressed to his newer address on Barnes Road, that the Bar had accelerated the one emergency loan note and the three Bar exam loan notes and that the full balance was payable. This letter stated: "We are forwarding these accounts to The Credit Bureau Incorporated for collection." A partially itemized statement attached to the Bar's file copy of the letter stated the total amount due was $1,495.96. The $100.27 student emergency loan was listed erroneously on the statement at $300, with a balance due of $254.71. All balances included interest at three percent calculated through August 11, 1985.

## B. Collection Agency Efforts

The collection agency telephoned Applicant August 27, 1985, demanding a greater sum than he owed. In two telephone calls in January 1986, the collection agency also demanded a different, increased amount of $1,700 to $1,800.

Applicant admitted at all times that he owed the loans but disputed that the amount demanded was correct. Applicant and the collection agency argued. A credit report showed that Applicant owed no other bills but that he lacked a job or assets to pay any judgment that might be obtained. No court action was taken to collect, and the collection efforts became dormant.

On March 16, 1987, Applicant received a letter from the collection agency demanding payment of $2,006. Applicant demanded, in writing, a detailed statement of the amounts due on the four loans. The collection company obtained the detailed statement from the Bar in April of 1987 and provided the accounting to Applicant.

Applicant paid the debt to the Bar by borrowing from another lender less than a month after the detailed accounting of the debt was provided to him.

## C. The Shoplifting Charge

A private store detective arrested Applicant on December 27, 1985, after he left a grocery store with a package of meat in his overcoat pocket without paying. The detective's testimony at the Trial Panel hearing is not inconsistent with Applicant's version of events. The unresolved fact issue is whether he intended to steal or was instead distracted by events in the store and a suddenly remembered appointment, as he claims.

## *LEGAL STANDARDS FOR ADMISSION*

ORS 9.220 provides:

"An applicant for admission as attorney must apply to the Supreme Court and show that the applicant:

"(1)   Is at least 18 years old * * *.

"(2)(a)  Is a person of good moral character.

"(b)   For purposes of this section * * * the lack of 'good moral character' may be established by reference to acts or conduct that reflect moral turpitude or to acts or conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and nation. The conduct or acts in question should be rationally connected to the applicant's fitness to practice law."

Applicants must prove good character. Rule 7.5 of the Oregon State Bar Rules of Procedure provides that applicants have "the burden of establishing by clear and convincing evidence that he or she has the requisite good moral character." *Cf. Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 402, 737 P2d 595 (1987) for a discussion of the meaning of "clear and convincing" in the context of persuasion and fact-finding. However, BR 7.6 provides: "While an applicant for admission has the ultimate burden of proof * * * the Bar shall initially have the burden of producing evidence in support of its position that the Applicant should not be admitted to the practice of law."

Before this court may admit an applicant, the court must direct an order to be entered "to the effect that the applicant is * * * of good moral character." ORS 9.250. The reason for the requirement is protection of the public in their dealings with practitioners. Protection of the public does not,

however, permit denying individual applications on mere suspicion. *See Schware v. Board of Bar Examiners,* 353 US 232, 241, 77 S Ct 752, 757, 1 L Ed 2d 796, 803 (1957); *In re Taylor,* 293 Or 285, 289, 647 P2d 462 (1982).

The good moral character of an applicant for admission must be judged at the time of admission but, of course, prior alleged wrongdoing, reflecting adversely upon applicant's character, is relevant. The admission statute is phrased in the present tense. It requires an applicant to show that she or he "is a person of good moral character." ORS 9.220(2)(a). The statute requires that acts or conduct relied upon to question individual honesty, fairness, and respect for law and the rights of others be "rationally connected to the applicant's fitness to practice law." ORS 9.220(2)(b).

This court's cases expressly recognizing that present character is the issue included *In re Fine,* 303 Or 314, 317, 736 P2d 183 (1987), and *In re Bernard Jolles,* 235 Or 262, 276, 383 P2d 388 (1963) ("present good moral character"). *See also In re Rowell,* 305 Or 584, 588, 754 P2d 905 (1988) (rehabilitation established); *In re Bevans,* 294 Or 248, 252, 655 P2d 573 (1982) (on attorney's application for reinstatement from a summary suspension following a conviction involving moral turpitude, the court found "applicant is presently possessed of good moral character").[2]

## ANALYSIS OF THE EVIDENCE

### A. *Showing of Good Character*

In the present case, several circuit court judges, Northwestern Law School faculty and administrative staff, the law school dean, a nun, other religious professionals, Portland State University faculty and over a half-dozen practicing attorneys vouch for applicant's moral character and honesty. Strong and uninterrupted cross-examination of many of them did not shake their belief in Applicant's character based upon

---

[2] *See also Hightower v. State Bar of California,* 34 Cal 3d 150, 193 Cal Rptr 153, 666 P2d 10 (1983) (notwithstanding the absence of confession of guilt or expression of remorse, rehabilitation and good character were sufficiently shown three years later where there was no evidence indicating petitioner was not rehabilitated); *Application of Allan S.,* 282 Md 683, 387 A2d 271 (Md App 1978) (prior conduct is not conclusive of a lack of present good character; five years since second incident of theft by shoplifting.)

their actual experience and contacts with him. Others presented affidavits based on individualized situations where Applicant was in contact with them in varied settings extending over significant periods of time. Credit reports obtained both by the Bar and the collection agency showed no other debts or defalcations. Arrest records obtained by the Bar show no other arrests before or after the 1985 shoplifting charge.

## B. The "No" Answer

Question 16(d) used in Bar Admission Application during 1986-87 asked: "Do you now have any accounts or obligations past due for payment more than 60 days? Yes ___ No ___." The instructions for answering all 23 subparts of question 16 provided:

> "If your answer to any of the portions of question 16 is "yes," attach a separate sheet of paper to this application, in duplicate, with a full explanation of the circumstances * * *."

Applicant asserted lack of care with his own record keeping and that he once had a belief, at an earlier time, that all loans made were covered by the Bar's August, 1983, letter waiving payments. Applicant repeatedly acknowledged that this belief was mistaken. He further explained that he misinterpreted the question to apply only to debts fixed in amount and that the amount of any loans was not, in his mind, fixed with certainty as a liquidated or definite amount. Applicant, in his signed brief to us states this as follows:

> "From 1980-1983, Applicant knew how much he owed and made payments. From 1983-1985 Applicant believed the loans were forgiven. From August 1985-October 1986, Applicant knew that the loans had not been forgiven because the loans were assigned [to a collection agency] and Applicant was so advised.

> "Applicant specifically stated that, at the time he filed his application in October 1986, he no longer believed that the Bar loans were forgiven because the Bar loans had been assigned to a collection agency and he had been notified by letter to that effect (Tr pp. 279-280, 305, 331-332; BBX pp 31, 40, 41, 42, 46). Further, that he 'misunderstood' question 16(d) ... for he thought the 'question solicited information of debt that I knew the exact amount ... which I was being billed monthly but which I had not made a payment on in more than 60 days since I received the bill.' "

Applicant confirmed that the collection agency had contacted him by telephone several times from August 1985 through January 1986, but stated that the amount demanded differed from the amount assigned and was also more than he believed he owed. The collection agency evidence confirms that Applicant agreed he owed money on the loans and made no attempt to deny or excuse the debt. That evidence also shows applicant had no ability to pay at that time.

The August 26, 1983, forgiveness letter sent by the affirmative action program to Applicant confirmed that "repayment of your conditional loan [sic] in the amount of $8,750 is waived due to your sitting for the July 1983, Oregon Bar Exam." Two loans, which the Bar did not intend to forgive, were granted before the August 1983 waiver of repayment letter. However, the letter did not mention that there were any loans or balances to repay. Two additional loans were granted shortly thereafter. Applicant testified: "I did not remember exactly when I got the letter of forgiveness. I had gotten some letter. But what day, what year, I didn't really know." Applicant's assertion that he did not have adequate records to determine the amount due is borne out by the fact Applicant did not attempt to correct, or even notice, a $200 error made by the Bar when it stated his emergency student loan was for $300 rather·than $100.27.

Applicant denied receiving an April 1985 collection letter from the Bar which itemized the loans and the Bar's version of the amounts due. The denial is consistent with documentation in the record.

On the Bar application questionnaire for the July 1983 examination, Applicant answered "no" to the debt owing question. Between April 1983 and October 1986, abbreviated copies of the April 1983 application were used for the current application in the Applicant's repeated attempts to pass the examination. The Applicant consistently interpreted Question 16(d) as not applying to the Bar loans. He contends that, when he answered the October 1986 debt-owing question, he "misinterpreted" the question on the Bar's questionnaire to not cover the loans owed to the Bar which were in controversy over what fixed amount was owed.

Question 16(d) is phrased in terms of "accounts or

obligations," which gives some support to Applicant's consistent interpretation that it did not apply to the Bar loans. Applicant answered other questions by providing information that was not complimentary or favorable to himself on both the 1983 and 1986 questionnaires.

## C. The Shoplifting Accusation

■　The shoplifting charge was dismissed in 1986 as part of a civil compromise in which Applicant paid $100. Jonathan Liss represented to the Bar Examiners that, as Applicant's attorney on the shoplifting charge, he convinced Applicant to accept the civil compromise and dismissal of charges over Applicant's objections that Applicant was innocent.

The Trial Panel did not find that the store incident was grounds for refusing admission to practice. The fact of a charge and a dismissal is not, in and of itself, determinative on the question of moral character. See In re Taylor, 293 Or 285, 647 P2d 462 (1982).

This court has held, however, in the context of professional disciplinary proceeding against a sitting circuit judge, that entering into a civil compromise of a criminal charge does not prevent an inquiry by the appropriate professional agency or this court into the underlying facts of the conduct in question. An independent review and evaluation of the evidence is, instead, in order. In re Roth, 293 Or 179, 188, 645 P2d 1064 (1982); see also In re Taylor, supra, 293 Or at 289.

On the record before us, any finding of criminal or dishonest intent could only arise from speculation. We are unwilling to say that the fact of leaving the store without paying or entering into a civil compromise under the circumstances of this case proves a dishonest intent in the face of Applicant's invariable assertions of innocence of crime. Moreover, his other conduct following the incident is consistent with an attitude of innocence and the explanation given.

Applicant has no other record of accusations of wrong-doing except a civil complaint in small claims division and a minor-violation traffic citation involving a collision. He promptly reported this to the Bar. We agree with the Trial Panel that the 1985 shoplifting charge and his agreement to a $100 civil compromise do not provide a sufficient basis for

denying Applicant admission to the Bar on the grounds that Applicant lacks good moral character.

### D. Applicant's Explanations

■ The Bar contends that the Applicant's credibility is undermined by Applicant's explanations that he did not know how to contact the collection agency, did not know the correct loan balance but had attempted to obtain an accurate detailed statement of the balance, and that he believed the balance demanded was too high.

We have exhaustively reviewed the evidence on this subject, and draw the following conclusions:

1. Applicant almost certainly never knew how much he owed the Bar. The Bar's records are unclear; the collection agency's are worse. This fact, coupled with Applicant's unusual but (to us, in this setting) reasonable explanation of his erroneous answer to Question 16(d) satisfies us that Applicant never intended to deceive the Bar. The incorrect answer to Question 16(d) is no ground for denying Applicant admission to the Bar.

2. Neither is the fact that Applicant's various *post hoc* explanations for his erroneous answer were not always consistent a basis for denying him admission, unless this court was to determine that Applicant now is trying to do something we have already held he was *not* trying to do with his answer to Question 16(d), *viz,* mislead the Bar or this court. We have no basis for such a determination. As noted, the information available to Applicant from time to time was inconsistent; that it resulted thereafter in inconsistent beliefs concerning what, if anything, was owed and to whom may reflect lack of sophistication or poor record keeping, but it does not reflect dishonesty.

Based on the totality of evidence in the record, and giving due weight to the substantial body of evidence from a wide variety of citizens as to his character and honesty, this court finds by clear and convincing evidence that Applicant is a person of good moral character entitled to admission to the Bar of this State.

Somtim Tobiga shall be admitted. Application granted.

**VAN HOOMISSEN, J.,** specially concurring.

I agree with the result announced by the majority.

ORS 9.220 states the general requirements for admission to the practice law in Oregon:

"An applicant for admission as attorney must apply to the Supreme Court and show that the applicant:

"(1)   Is at least 18 years old, which proof may be made by the applicant's affidavit.

"(2)(a)   Is a person of good moral character.

"(b)   For purposes of this section * * * the lack of 'good moral character' may be established by reference to acts or conduct that reflect moral turpitude or to acts or conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation. The conduct or acts in question should be rationally connected to the applicant's fitness to practice law.

"(3)   Has the requisite learning and ability, which must be shown by the examination of the applicant, by the judges, or under their direction, in open court, at the term at which the application is made * * *."

I am satisfied that applicant has satisfied the above statutory requirements.

BR 7.6 provides:

"While an applicant for admission has the ultimate burden of proof to establish good moral character and general fitness to practice law, the Bar shall initially have the burden of producing evidence in support of its position that the applicant should not be admitted to the practice of law."

The evidence the Oregon State Bar offers in opposition to applicant's admission is, at best, ambiguous. In no way does that evidence support a conclusion that applicant should not be admitted to the practice of law.

On *de novo* review of the entire record in this case, including the recommendations of numerous judges, lawyers, teachers and other persons who have known applicant for many years, I conclude that applicant has shown by clear and convincing evidence that he has the requisite good moral character and general fitness to practice law.